**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |  |
|---|---|---|
| SAMARITAN MINISTRIES INTERNATIONAL, a religious Illinois non-profit corporation, 6000 N. Forest Park Drive Peoria, Illinois 61614, | ) ) ) ) ) ) | |
| and ten of its New Mexico members, namely, | ) ) | **Case No. 1:23-cv-01091-MIS-SCY** |
| ZACHARY & RACHEL CORDEL, 662 CR F, Clovis, New Mexico 88101, | ) ) ) | **Jury Trial Requested** |
| DAVID ALLAN & MONETTE BELL, 3 Mountain Vista Trail, La Luz, NM 88337, | ) ) ) | |
| REV. ANDREW & HEATHER HEATH, 1310 Meadow Lane, Roswell, NM 88203, | ) ) ) | |
| JAY & AMY O'NEILL, 275 Blue Sky Lane, Mesilla Park, NM 88047, and | ) ) ) | **SAMARITAN AND INDIVIDUAL PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| REV. NATHAN & REBEKAH BIENHOFF, 3501 Highland Road, Roswell, NM 88201, | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | |
| ALICE T. KANE, in her personal capacity and in her official capacity as the Superintendent of Insurance for New Mexico, 1120 Paseo de Peralta 4th Floor, Santa Fe, NM 87501, | ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | ) ) ) ) | |

# Table of Contents

I.   INTRODUCTION. ..................................................................................................1

II.  PROCEDURAL AND REMEDIAL FRAMEWORK. ....................................................1

    A. 42 U.S.C. §1983 Is the Primary Vehicle for Plaintiffs' Federal Claims. ...............1

    B. 42 U.S.C. §1983 Facilitates Both Official- and Personal-Capacity Claims. ..........2

    C. 42 U.S.C. §1983 Is the Vehicle for Plaintiffs' Federal *Constitutional* Claims. .......2

    D. 42 U.S.C. §1983 Also Is the Vehicle for Plaintiffs' Federal *Statutory* Claims. ......3

III. LEGAL STANDARDS FOR RULE 12 MOTIONS TO DISMISS. ...............................3

    A. Claims, Based on Alleged Facts With All Inferences, Need Only Be Plausible. 3

    B. The Allegations Need Only Provide Fair Notice of Claims. ...............................3

    C. Documents Referenced or Incorporated in Complaint May Be Considered. .....4

    D. A Defendant's Jurisdictional Challenges May Require Evidentiary Support. ...4

    E. A Motion to Dismiss Is a 'Harsh Remedy' and High Bar for Defendants. .........4

    F. Surviving a Motion to Dismiss Presents a 'Low Bar' for Plaintiffs. ...................5

    G. A Motion to Dismiss Is an 'Inappropriate' Vehicle for Qualified Immunity. ....5

       1. *MTDs on Qualified Immunity Grounds Are 'Generally Inappropriate.'* ..............5

       2. *Qualified Immunity Is 'Almost Always a Bad Ground of Dismissal.'* ...................5

       3. *Qualified Immunity Is Often a 'Perilous' Ground for Dismissal.* .........................6

       4. *Qualified Immunity Is Typically Resolved at Summary Judgment.* ......................6

    H. A Motion to Dismiss Is an Inappropriate Vehicle for Strict Scrutiny. ...............6

       1. *Strict Scrutiny Is 'Exacting' and 'Extremely Fact-Specific.'* .................................6

       2. *Strict Scrutiny Is 'Not Possible' Without a 'Developed Record.'* .........................7

    I. Subsections G & H Above Alone Require Denial of Defendant's MTD............8

    J. Supreme Court Opinions (Including Dicta) Will Strictly Control Here. ............8

IV. ARGUMENT. ....................................................................................................9

    A. All Sixteen Counts Survive Eleventh Amendment Sovereign Immunity...........9

       1. *No Sovereign Immunity Exists for Prospective Relief (Ex Parte Young).* ..............9

       2. *No Sovereign-Immunity 'Abrogation' Is Required for §1983 or §2201.* ...............11

B. All Sixteen Counts Are 'Ripe' Due to 'Pre-Enforcement Standing.' .................12

　　1.　Standing & Justiciability: Key Principles. ..................................................12

　　2.　Pre-Enforcement Standing Defeats Ripeness Defense: Consumer Data. ............12

　　3.　Pre-Enforcement Standing Defeats Ripeness Defense: 303 Creative. ................12

　　4.　Pre-Enforcement Standing Defeats Ripeness Defense: Air Evac. ......................13

　　5.　'Prudential Ripeness' Adds Nothing Here.....................................................13

　　6.　Pre-Enforcement Standing Is Valid for As-Applied Challenges..........................14

　　　　(a)　A Classic Facial Challenge Would Be Inapt Here. ..........................14

　　　　(b)　As-Applied Pre-Enforcement Challenges Are Common...................14

　　　　(c)　Defendant's Distinction, If Accepted, Would Void Much Precedent. .............16

　　7.　Pre-Enforcement Standing Is Clearly Established Here: Peck..........................16

　　　　(a)　The Three Main Factors for Pre-Enforcement Challenges.............................16

　　　　(b)　Not All Three Factors Are Required. ........................................17

　　　　(c)　Evidentiary Bar Is 'Extremely Low' in this First Amendment Case. .............17

　　　　(d)　Plaintiffs Meet this 'Extremely Low' Standard Many Times Over.................17

　　　　(e)　Factor 1: OSI Has Enforced & Is Enforcing vs. 'Similar Conduct.' .............17

　　　　(f)　Factor 2: OSI—and/or 'Any Person'—May Initiate Legal Action. .................18

　　　　(g)　Factor 3: OSI Has 'Not Disavowed' Future Enforcement...........................19

　　　　(h)　Additional Factor: Nothing Even Resembling an HCSM Is Safe. ...................19

　　　　(i)　Plaintiffs Clearly Meet 'Extremely Low' Standard for Standing. .................19

　　　　(j)　OSI Must Disavow Its 'Policy'—Not Just Its 'Enforcement Here.' .................20

　　8.　'Facial' and 'As-Applied' 'Labels' Are 'Nebulous' and Not Dispositive. .............20

　　9.　If 'Facial Label' Disables the VC, Plaintiffs Seek Leave to Amend It....................21

C. Count 14 for Federal Preemption States a Valid Claim. ...............................21

D. Count 16 Under New Mexico RFRA Survives Sovereign Immunity.................22

E. All Sixteen Personal-Capacity Claims Survive MTD on Qualified Immunity. 24

F. All Fifteen Federal Counts Properly Plead Defendant's Personal Liability. ....27

V. CONCLUSION.................................................................................................27

## I.     INTRODUCTION.

Plaintiffs filed a 366-page Verified Complaint (Doc. 1; VC), including sixteen Causes of Action (Counts) and 68 Exhibits (Docs. 1-3 to 1-70), and a Motion for Preliminary Injunction (Doc. 10; MPI). In all, Plaintiffs plead fifteen federal Counts and one state Count against Defendant in both her official and her individual/personal capacities. All official-capacity claims seek injunctive and declaratory relief while the individual-capacity claims seek monetary relief (damages). Plaintiffs have pled multiple grounds for this Court's jurisdiction. VC ¶¶520-534.

Defendant filed a Motion to Dismiss In Lieu of Answer (Doc. 4; MTD) under F.R.Civ.P. 12(b)(1) and 12(b)(6). This Court ordered joint briefing and argument of both Motions (Doc. 14). This brief opposes Defendant's MTD and, where appropriate, supports Plaintiffs' MPI.

Defendant's research is outdated. The MTD cites 69 judicial precedents, only 31 of which are from this century, only 10 of which are from the past decade, and only one of which is from the past two years—and even that one is Plaintiffs' authority that Defendant attempts to refute. Much of Defendant's authority is replaced or limited by more recent authority, as discussed herein.

## II.     PROCEDURAL AND REMEDIAL FRAMEWORK.

Having established subject-matter jurisdiction, VC ¶¶520-534, which withstands sovereign immunity, *infra* §IV.A, Plaintiffs pursue their federal claims against Defendant under the Civil Rights Act (42 U.S.C. §1983) and the Declaratory Judgment Act (28 U.S.C. §2201).

### A.     42 U.S.C. §1983 Is the Primary Vehicle for Plaintiffs' Federal Claims.

Plaintiffs bring federal claims against Defendant in her "individual and official capacity, under 42 U.S.C. §1983." *Wise v. Caffey*, 72 F.4th 1199, 1204 (10th Cir. 2023). Section 1983 is "general[ly] availab[le] as 'a remedy for the vindication of rights secured by federal [law].'" *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 191 (2023). "[A]ny person [can]

invoke this cause of action against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id*. at 175. Section 1983 "reflected the regrettable reality that 'state instrumentalities' could not, or would not, fully protect federal rights. We have adhered to this understanding of §1983's operation. To guarantee the protection of federal rights, 'the §1983 remedy [is], in all events, supplementary to any remedy any State might have.'" *Id*. at 177.

**B.      42 U.S.C. §1983 Facilitates Both Official- and Personal-Capacity Claims.**

"'Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.'" *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022). As to the latter, §1983 plaintiffs may sue a state official "for *injunctive and declaratory* relief in his official capacity." *Id*. (emphasis added). As to the former, "[t]here is no doubt that damages claims have always been available under §1983 for clearly established violations of the First Amendment." *Tanzin v. Tanvir*, 592 U.S. 43, 50 (2020).[1] In sum, a §1983 "plaintiff may sue a defendant in his personal capacity—that is, 'to impose personal liability upon a government official for actions he takes under color of state law—or in his official capacity.'" *Tucker v. Univ. of New Mexico Bd. of Regents*, 618 F.Supp.3d 1201, 1222 (D.N.M. 2022).

**C.      42 U.S.C. §1983 Is the Vehicle for Plaintiffs' Federal *Constitutional* Claims.**

Section 1983 imposes "liability on any person who, under color of state law, deprive[s] another of a constitutional right." *Tanzin*, 592 U.S. at 50. "Section 1983 allows an individual to seek damages from state officials who have violated that individual's constitutional rights." *Rosales v. Bradshaw*, 72 F.4th 1145, 1150 (10th Cir. 2023). "[T]he constitutional violation

---

[1] Whether Defendant's "violations of the First Amendment" are "clearly established" relates only to her **qualified-immunity** defense, *infra* at §IV.E.

2

actionable under §1983 is complete when the wrongful action is taken." *Roberts v. Winder*, 16 F.4th 1367, 1375 (10th Cir. 2021). "[P]laintiffs may bring constitutional claims under §1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.' This is [true for any] claim grounded in the Bill of Rights." *Knick v. Twp. of Scott*, 139 S.Ct. 2162, 2172-73 (2019) (citations omitted; cleaned up).

    **D.**    **42 U.S.C. §1983 Also Is the Vehicle for Plaintiffs' Federal *Statutory* Claims.**

Section 1983 also enforces any statutory "right that Congress validly … creates." *Talevski*, 599 U.S. at 192. "[B]ecause '§1983 generally supplies a remedy for the vindication of rights secured by federal statutes,' rights so secured are deemed 'presumptively enforceable' under §1983," *id*. at 184, and they remain so enforceable unless Congress created an exclusive "remedial scheme" within the statute that conferred the rights, *id*. at 186-88.

**III.**    **LEGAL STANDARDS FOR RULE 12 MOTIONS TO DISMISS.**

    **A.**    **Claims, Based on Alleged Facts With All Inferences, Need Only Be Plausible.**

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction. And to survive a 12(b)(6) motion to dismiss, a plaintiff must state a plausible claim for relief on the face of a well-pleaded complaint." *Audubon of Kansas v. U.S. DOI*, 67 F.4th 1093, 1108 (10th Cir. 2023). All "well-pleaded facts" are viewed as "true" in "the light most favorable to the Plaintiff' together with "all reasonable inferences" therefrom. *Id*.

    **B.**    **The Allegations Need Only Provide Fair Notice of Claims.**

"Plaintiffs need [only] allege 'enough factual detail to provide *fair notice* of what the claim is and the grounds upon which it rests.'" *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023) (cleaned up; emphasis added). Factual allegations are "entitled to a presumption of truth," *id*. at 1289, "without requiring any further detail or substantiation," *id*. at 1290. In no

event may a court "impermissibly move beyond Plaintiffs' allegations and view the facts in the light most favorable to" Defendant. *Id*. at 1293. The court must "'resolve all reasonable inferences' in [plaintiff's] favor." *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023). "[A] plaintiff's allegations are 'read in the context of the entire complaint,' and a plaintiff need *only 'nudge' their claim 'across the line* from conceivable to plausible.'" *Id*. at 1292 (cleaned up; emphasis added).

### C.     Documents Referenced or Incorporated in Complaint May Be Considered.

Under Rule 12(b)(6), courts "may consider certain documents outside the four corners of the complaint[, e.g.,] documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters [for] judicial notice.'" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).

### D.     A Defendant's Jurisdictional Challenges May Require Evidentiary Support.

Under Rule 12(b)(1), subject-matter jurisdictional challenges can be facial or factual. *Rural Water Dist. v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012). "A facial attack 'looks only to the factual allegations of the complaint in challenging the court's jurisdiction.'" *Id*. "A factual attack, on the other hand, 'goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction.'" *Id*. In the latter case, a court "may consider affidavits and other documents to resolve *disputed jurisdictional facts* under Rule 12(b)(1) *without* converting the motion to a *summary judgment motion*." *S.E.B.M. v. U.S.*, 659 F.Supp.3d 1249, 1260 (D.N.M. 2023) (emphasis added). If the 366-page VC and 68 Exhibits are insufficient to establish jurisdiction, Plaintiffs request an evidentiary hearing and opportunity to provide additional evidence to resolve any *disputed jurisdictional facts*.

### E.     A Motion to Dismiss Is a 'Harsh Remedy' and High Bar for Defendants.

"'Granting a motion to dismiss is a *harsh remedy* which must be *cautiously studied*, not

only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Clinton*, 63 F.4th at 1276 (10th Cir. 2023) (cleaned up; emphasis added).

**F.      Surviving a Motion to Dismiss Presents a 'Low Bar' for Plaintiffs.**

"There is a '*low bar for surviving a motion to dismiss*,' and 'a well-pleaded complaint *may proceed even if* it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Clinton*, 63 F.4th at 1276 (emphasis added). That a plaintiff may "'have a difficult time establishing the merits of its claim is of little import now.'" *Id.*

**G.      A Motion to Dismiss Is an 'Inappropriate' Vehicle for Qualified Immunity.**

Defendant seeks to dismiss all personal/individual capacity claims against her on the ground of qualified immunity. *See* argument *infra* at §IV.E.

### 1.      *MTDs on Qualified Immunity Grounds Are 'Generally Inappropriate.'*

"[D]ismissal for failure to state a claim on qualified immunity grounds is generally inappropriate because qualified immunity defense requires a factual review." *Hammett v. Okla. Dep't of Mental Health*, 1998 WL 42707998 (10th Cir. 1998) (unpub.) (citing *Moore's Federal Practice*, §12.34[4][b] & n. 56 (3d ed. 1998)); *Waltrip v. AMPMBC*, 2004 WL 7337964, at *5 (D.N.M. Apr. 23, 2004) (Black, J.) (same); *Brantley v. Unified Sch. Dist.*, 2008 WL 2079411, at *6 (D.Kan. May 15, 2008) (same). "As we have repeatedly cautioned, 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021); *Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023) (same); *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (same).

### 2.      *Qualified Immunity Is 'Almost Always a Bad Ground of Dismissal.'*

"Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018) (quoting *Jacobs v. City of Chicago,* 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring)). *Reed* cited affirming cases from six other

circuits, e.g., *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). *See also Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

### 3.    *Qualified Immunity Is Often a 'Perilous' Ground for Dismissal.*

Indeed, "'[i]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Jackson v. City of Cleveland*, 64 F.4th 736, 745-46 (6th Cir. 2023); *Anders*, 984 F.3d at 1175 (same); *Watkins v. Healy*, 986 F.3d 648, 668 (6th Cir. 2021) (same); *Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 635 (6th Cir. 2020) (same).

### 4.    *Qualified Immunity Is Typically Resolved at Summary Judgment.*

"The procedural posture of the qualified-immunity inquiry may be critical. Because they turn on a fact-bound inquiry, 'qualified immunity defenses are typically resolved at the summary judgment stage' rather than on a motion to dismiss." *Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022); *accord Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022); *MacIntosh*, 69 F.4th at 315; *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019); *Encinias v. N.M. Corr. Dep't*, 659 F.Supp.3d 1227, 1237 (D.N.M. 2023) (Gonzales, J.); *Robinson v. Centurion Corr. Healthcare of N.M.*, 2023 WL 6143557, at *5 (D.N.M. Sept. 20, 2023) (Urias, J.).

### H.    **A Motion to Dismiss Is an Inappropriate Vehicle for Strict Scrutiny.**

### 1.    *Strict Scrutiny Is 'Exacting' and 'Extremely Fact-Specific.'*

"Under the Free Exercise Clause, a government entity normally must satisfy at least 'strict scrutiny[.]'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 532 (2022). Plaintiffs' constitutional claims require strict scrutiny, the "most exacting scrutiny," *Espinoza v. Mont. Dep't of Rev.*, 140 S.Ct. 2246, 2255 (2020), including "the extremely fact-specific analysis required for the narrow tailoring inquiry," *Brewer v. W. Irondequoit Sch. Dist.*, 212 F.3d 738, 753 (2d Cir. 2000).

Defendant's "policy can survive strict scrutiny only if it advances '*interests of the highest*

*order*' and is '*narrowly tailored* to achieve those interests,'" *Fulton v. City of Phila.*, 141 S.Ct. 1868, 1881 (2021) (emphasis added), i.e., if it is "*the least restrictive means* of achieving some *compelling state interest*," *Thomas v. Rev. Bd.*, 450 U.S. 707, 718 (1981) (emphasis added). Courts must "'look beyond broadly formulated interests' and … 'scrutinize the asserted harm of granting *specific exemptions to particular religious claimants*.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014) (cleaned up; emphasis added). Only a "precise analysis" can determine if the Defendant has a compelling interest "in denying an exception to [Plaintiffs]. Once properly narrowed, [Defendant's] asserted interests are insufficient." *Fulton*, 141 S.Ct. at 1881 (cleaned up). Three recent circuit cases involving the military illustrate the rigor of this scrutiny in the face of *national security* interests—as *compelling* as government interests usually get. VC ¶¶996-1011.

### 2.   *Strict Scrutiny Is 'Not Possible' Without a 'Developed Record.'*

"*Without a developed record*, it is *not possible* to answer the '*narrowly tailored*' question in this case at this motion-to-dismiss stage." *Pro-Life Action Ministries v. Minneapolis*, ___ F.Supp.3d ___, 2023 WL 7131517, at *6 (D.Minn. Oct. 30, 2023) (emphasis added). This "extremely fact-specific analysis [requires] a more fully developed factual record." *Brewer*, 212 F.3d at 753. *See N.E. Penn. Freethought Soc'y v. Cnty. of Lackawanna*, 158 F.Supp.3d 247, 255 (M.D.Pa. 2016) (MTD denied because "fully developed record" required to complete "strict scrutiny analysis"); *N. Arapaho Tribe v. Ashe*, 92 F.Supp.3d 1160, 1187 (D.Wyo. 2015) ("'[The parties] should have the opportunity to further develop the record on [the] compelling interest'" analysis) (quoting *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475 (5th Cir. 2014)).

Undeveloped records require remand. "We therefore REMAND these cases to afford both parties an opportunity to develop a record, and for a determination as to whether these regulations represent the least restrictive means of advancing the government's interests." *U.S. v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (*en banc*). "[Here,] the en banc court found the factual record

insufficient to determine whether the Eagle Act and its regulations are the least restrictive means of [furthering] compelling interests." *U.S. v. Wilgus*, 638 F.3d 1274, 1281 (10th Cir. 2011) (discussing *Hardman*, *supra*). "Nor is it appropriate to fault the government for failing [the] least restrictive [means inquiry, because] the district court short-circuited [its] ability to present evidence [and left] the record in this [undeveloped] state[.]" *O Centro Espirita Beneficiente v. Ashcroft*, 389 F.3d 973, 990 (10th Cir. 2004) (*en banc*) (seven-judge partial dissent discussing 282 F.Supp.2d 1236 (D.N.M. 2002)), *aff'd*, 546 U.S. 418 (2006). "[W]e vacated the District Court's dismissal of the plaintiffs' [claims] because the plaintiffs should have been 'afforded the opportunity to conduct discovery and develop the record regarding whether the Statutes are narrowly tailored[.]'" *Free Speech Coal. v. Att'y Gen. of U.S.*, 974 F.3d 408, 417 (3d Cir. 2020). A "more fully developed record was needed to resolve the compelling interest and narrowly tailored inquiries." *California Pro-Life Council v. Randolph*, 507 F.3d 1172, 1176 (9th Cir. 2007).

Remand is often required even for lesser (less than strict) scrutiny. *See, e.g.*, *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 185 (1997) (record insufficiently developed for "intermediate First Amendment scrutiny," e.g., "narrowly tailored to further important governmental interests").

### I.      Subsections G & H Above Alone Require Denial of Defendant's MTD.

As Defendant notes, "the record before the Court is devoid of any factual development." MTD at 8. While Plaintiffs have provided evidence in and with their Verified Complaint, Defendant has yet to supply any of her own, leaving the record undeveloped and incapable of supporting competent analysis of issues such as strict scrutiny and qualified immunity.

### J.      Supreme Court Opinions (Including Dicta) Will Strictly Control Here.

Like Plaintiffs' MFPI (Doc. 10), this Opposition Brief relies heavily on Supreme Court precedent, which must be applied with special care. "We do [not] approach opinions of the

Supreme Court with a view to reaching the *narrowest construction possible*. Instead, we have said

that this court *considers itself bound* by Supreme Court *dicta* almost as firmly as by the Court's

outright holdings, particularly when the *dicta is recent and not enfeebled by later statements*."

*Dine Citizens v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) (emphasis added).

## IV.    ARGUMENT.

Defendant mounts six arguments for dismissal: **(A)** All sixteen Counts are barred by

sovereign immunity. MTD at 3-5. **(B)** All sixteen Counts should be dismissed as unripe. MTD at

5-11. **(C)** Count 14 for federal preemption fails to state a claim. MTD at 11-13. **(D)** Count 16 under

New Mexico's Religious Freedom Restoration Act is barred by sovereign immunity. MTD at 13-

15. **(E)** The individual/personal-capacity claims within all sixteen Counts are barred by qualified

immunity. MTD at 15-16. **(F)** The fifteen federal Counts fail to state claims against Defendant for

her personal liability. MTD at 16-17. Each argument is addressed in turn.

### A.    All Sixteen Counts Survive Eleventh Amendment Sovereign Immunity.

#### 1.    *No Sovereign Immunity Exists for Prospective Relief (Ex Parte Young).*

Defendant says "Eleventh Amendment immunity extends to both State agencies and State

officials as 'an arm of the state.'" MTD at 3. But Plaintiffs have not sued a State, an arm of a State,

or any other sovereign entity entitled to sovereign immunity. Rather, under 42 U.S.C. §1983,

Plaintiffs have pled fifteen federal Counts (plus one state Count) against Defendant in both her

official and her personal capacities. All official-capacity claims seek prospective injunctive and

declaratory relief (and attorneys' fees) and all personal/individual-capacity claims seek damages

(and attorneys' fees).[2] As described below, official-capacity claims against state officials have

---

[2] Even "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 800-801 (2021). The "ability to effectuate a partial remedy satisfies" redressability. *Id*. "[A] party whose rights

been allowed since *Ex parte Young*, 209 U.S. 123 (1908), and individual-capacity claims against such (non-sovereign) individuals are not subject to sovereign immunity at all (but may be subject to judicially-created *qualified immunity*, as Defendant argues *infra* at §IV.E).

"'[T]here are three exceptions to the Eleventh Amendment's guarantee of sovereign immunity to states.'" *Frank v. Lee*, 84 F.4th 1119, 1130 (10th Cir. 2023). "'First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation[. Third], under *Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.'" *Id*. at 1131. The third exception—involving *Ex parte Young*—is dispositive here. But "the second exception—involving express congressional abrogation [of] immunity, here, under §1983—also comes into play." *Id*.

Defendant ignores *Ex parte Young*. "[Defendant] invokes the State's sovereign immunity. But the *Ex parte Young* doctrine allows suits like [this] for *declaratory or injunctive relief* against state officers in their *official capacities*." *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (§1983 suit) (emphasis added). "This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to 'permit the federal courts to vindicate federal rights.'" *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011). "'Of course a state official in his or her official capacity, *when sued for injunctive relief*, would be a person under §1983 because official-capacity actions for prospective relief are not treated as actions against the State.' [I]n any case … federal courts routinely consider the *Ex parte Young* doctrine in the context of §1983 claims." *Frank*, 84 F.4th at 1131 (emphasis retained). "*Ex parte Young* applies to *both injunctive and declaratory relief*." *Chilcoat*, 41 F.4th at 1214 (10th Cir.) (emphasis added).

---

are invaded can always recover nominal damages without furnishing any evidence of actual damage." *Id*.

Like Plaintiffs here, "'Section 1983 plaintiffs may sue individual-capacity defendants [for] money damages and official-capacity defendants [for prospective] relief.'" *Id*.[3] In addition, despite their monetary nature, attorneys' fees are available even in official-capacity suits, since they do "not implicate sovereign immunity." *Frank*, 84 F.4th at 1131-32. In sum, Defendant devotes this entire section of argument to general (but inapplicable) Eleventh Amendment principles. Binding precedent supports all forms of relief sought here under all fifteen federal Counts (Counts 1-15).

### 2. *No Sovereign-Immunity 'Abrogation' Is Required for §1983 or §2201.*

Defendant also asserts that neither 42 U.S.C. §1983 nor 28 U.S.C. §2201 shows "that Congress intended to abrogate state immunity." MTD at 5. This is beside the point. First, as noted, declaratory relief under §2201 is available under *Ex parte Young*. Second, personal-capacity claims under §1983 have nothing to do with sovereignty. "Nor have we ever held that a [§1983 suit] against a state officer in his individual capacity implicates the Eleventh Amendment," *Lewis v. Clarke*, 581 U.S. 155, 166 (2017), since §1983 creates a "species of federal tort liability [for] state and local officers," *Thompson v. Clark*, 596 U.S. 36, 42 (2022). Officials who commit such "constitutional torts" are treated as citizens, not sovereigns. "The obvious difference is that this case features a suit against individual[ officials], who do not enjoy sovereign immunity." *Tanzin*, 592 U.S. at 52 (permitting damages under RFRA against FBI agents). There "are no constitutional reasons why we must" "shield [public] employees from personal liability." *Id*.

---

[3] "Official capacity suits 'impose liability on the entity that [the sued official] represents.'" *Sawyers v. Norton*, 962 F.3d 1270, 1278 n.4 (10th Cir. 2020). "The common-law absolute and qualified immunities that have been recognized in §1983 actions pertain to claims for monetary relief against state and local officials in their personal capacities. Neither the absolute nor qualified immunities extend to suits for injunctive or declaratory relief under §1983." *Brown v. Buhman*, 822 F.3d 1151, 1162 n.8 (10th Cir. 2016).

### B.    All Sixteen Counts Are 'Ripe' Due to 'Pre-Enforcement Standing.'

#### 1.    *Standing & Justiciability: Key Principles.*

"'[T]o invoke the jurisdiction of a federal court, a litigant must *have suffered, or be threatened with*, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (emphasis added). Plaintiffs need only establish that the "risk [of injury] would be reduced to some extent if [they] received the relief they seek." *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007). "Injunctions redress 'present ongoing' or 'imminent future' injuries. Injuries are 'present' when they have already come about, and 'imminent' when they [are] perhaps substantially likely to occur in the future." *Mikel v. Quin*, 58 F.4th 252, 258 (6th Cir. 2023). Similarly, a "declaratory judgment [may] issue only when 'it is substantially likely' to redress a plaintiff's actual or imminent injuries." *Id*.

#### 2.    *Pre-Enforcement Standing Defeats Ripeness Defense: Consumer Data.*

As Defendant appears to concede, ripeness is subsumed in pre-enforcement standing. MTD at 10. If otherwise, pre-enforcement standing would seldom, if ever, survive ripeness. That is why the rule is just the opposite: "*ripeness is seldom an obstacle to a pre-enforcement challenge* in this posture, where the plaintiff faces a 'credible threat' of enforcement, and '*should not be required to await and undergo [enforcement]*.'" *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 907 (10th Cir. 2012) (emphasis added). Thus, Samaritan's "pre-enforcement challenge" is ripe.

#### 3.    *Pre-Enforcement Standing Defeats Ripeness Defense: 303 Creative.*

"For the same reasons [Plaintiffs] have established [pre-enforcement] standing, we are satisfied that this case is ripe." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1175-76 (10th Cir. 2021), *rev'd on other grounds,* 600 U.S. 570 (2023). "[I]n pre-enforcement challenges, standing and ripeness often 'boil down to the same question.'" 6 F.4th at 1176 (quoting *SBA List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014)). "[A]rticle III does not require a pre-enforcement plaintiff to *risk*

*[adverse enforcement] before bringing claims* in federal court. *Any prudential considerations presented in this case do not prevent us from exercising our 'virtually unflagging' obligation to hear cases within our jurisdiction*." *Id*. (quoting *SBA List*, 573 U.S. at 167) (emphasis added). The Supreme Court confirmed this pre-enforcement standing here. *303 Creative*, 600 U.S. at 597. It noted that the small-business owner "faces a credible threat of sanctions unless she conforms her views to the State's." *Id*. She "worries that, if she enters the wedding website business, the State will force her to convey messages inconsistent with her" religious beliefs. *Id*. at 580. Samaritan has stronger evidence for the credibility of its worries. VC (Doc. 1) at ¶¶61-350.

### 4.    *Pre-Enforcement Standing Defeats Ripeness Defense: Air Evac.*

Likewise, *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 94 (4th Cir. 2022), *aff'g*, 523 F.Supp.3d 859 (S.D.W.Va. 2021)—a case almost identical to ours—easily dispatched a ripeness challenge. *Air Evac* enjoined a state insurance commissioner from pursuing an enforcement action against the air-ambulance membership program of Air Evac, a secular health care burden sharing program akin to HCSMs. Samaritan's case is similar to Air Evac's, only much stronger. *See* VC (Doc. 1) at ¶¶1276-1302; Pls. MFPI (Doc. 10) at 20-26. "A plaintiff may have standing prior to the culmination of an enforcement action based on the future injury if there is a 'credible threat of enforcement,' or 'under circumstances that render the threatened enforcement sufficiently imminent.'" 523 F.Supp.3d at 866 (quoting *SBA List*, 573 U.S. at 160). "For the same reasons, the Court finds that Air Evac's claim is ripe for adjudication." *Id*. at 867. The Fourth Circuit affirmed, rejecting every obstacle to jurisdiction and justiciability, including, necessarily, ripeness. 37 F.4th at 93-102. For these reasons also, the ripeness defense must fail.

### 5.    *'Prudential Ripeness' Adds Nothing Here.*

Defendant, perhaps sensing weakness in her argument, shifted gears: "Instead, the Defendant[] urge[s] the Court to review Plaintiffs' claims using the prudential ripeness doctrine."

MTD at 8. The *prudential* label changes nothing here, and logically could change nothing. Pre-enforcement standing would mean little if it could be so easily evaded by *ripeness* (under *any name*). In any event, this argument was expressly rejected in *303 Creative*, as noted above: "*Any prudential considerations* presented in this case do not prevent us from exercising our 'virtually unflagging' obligation to hear cases within our jurisdiction." *303 Creative*, 6 F.4th at 1176. For each and all of the reasons in Subsections 1-5 above, Defendant's ripeness defense must fail.

### 6. Pre-Enforcement Standing Is Valid for As-Applied Challenges.

Defendant (a) implies that pre-enforcement standing can never derive from *as-applied challenges* because they are "entirely dependent on contingent future events," MTD at 7, and (b) distinguishes *Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) solely on the ground that it involved a *facial* rather than *as-applied* challenge, MTD at 7. In essence, Defendant argues "as-applied pre-enforcement challenges" are improper. This argument fails for at least three reasons.

### (a) A Classic Facial Challenge Would Be Inapt Here.

A party "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both." *U.S. v. Sup. Ct. of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016). "'A facial challenge is a head-on attack [that] the challenged statute violates the Constitution in all, or virtually all, of its applications.'" *Id*. "A facial challenge to a [law is] the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). In our case, Plaintiffs need not allege or prove that whole provisions of the Insurance Code cannot be "constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the [provisions] would be valid." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248 (10th Cir. 2023).

### (b) As-Applied Pre-Enforcement Challenges Are Common.

Examples of as-applied pre-enforcement cases are abundant. *Holder v. Humanitarian L.*

*Project*, 561 U.S. 1, 16 (2010) described *Milavetz, Gallop v. U.S.,* 559 U.S. 229 (2010) as "considering an as-applied preenforcement challenge brought under the First Amendment." *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007), which involved "facial attacks" on a "partial-birth abortion ban," indicated that "the proper means to consider exceptions is by as-applied challenge" and "that preenforcement, as-applied challenges" appeared valid there. *Antonyuk v. Chiumento*, 89 F.4th 271, 383 (2d Cir. 2023) considered an "as-applied pre-enforcement challenge" to gun restrictions applied to churches, under the First and Second Amendments, and discussed cases in other circuits involving such "as-applied pre-enforcement" challenges. *See id.* at 383-84.

    *Braidwood Mgmt. v. EEOC*, 70 F.4th 914 (5th Cir. 2023) acknowledged "the posture of this case, which is an as-applied pre-enforcement challenge to how [religious freedom] interacts with Title VII and *Bostock*[.]" *Id.* at 926; *see also id.* at 929 (recognizing risks of "as-applied challenges in a pre-enforcement posture"). *Braidwood* also described *Telescope Media v. Lucero*, 936 F.3d 740, 749-50 (8th Cir. 2019) as "allowing a pre-enforcement, as-applied challenge to continue because Minnesota had publicly announced an intent to enforce its statute forcing wedding vendors to service homosexual and heterosexual marriages equally and had previously enforced the act against a non-compliant wedding vendor." 70 F.4th at 925 n.17; *Bella Health & Wellness v. Weiser*, ___ F.Supp.3d ___, 2023 WL 6996860, at *11 (D.Colo. Oct. 21, 2023) ("[Pre-enforcement] Plaintiffs seek relief from the CCPA being enforced against them").

    The *Tenth Circuit* is the same. In *Wy. Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023), the plaintiff sued state officials "under 42 U.S.C. §1983 for violating its First and Fourteenth Amendment rights [in] a variety of challenges to the campaign finance statute, some facial, some as applied, some pre-enforcement, some post-enforcement." *Id.* at 1232. After criticizing the "airy" allegations of plaintiff's "as-applied pre-enforcement vagueness claim," the Tenth Circuit held that

plaintiff did "successfully plead its challenge to the commentary exemption *as applied* to planned email communications," and thus "reverse[d] the dismissal of the commentary provision *pre-enforcement challenge as applied* to [plaintiff's] emails[.]" *Id*. at 1242 (emphasis added).[4]

>    (c) *Defendant's Distinction, If Accepted, Would Void Much Precedent.*

Even if *Peck* involves a facial challenge as Defendant claims, many other pre-enforcement cases do not, as shown above. This is because "facial challenges are unusual," VC ¶57, "best when infrequent," and "disfavored for several reasons," *Sabri v. U.S.*, 541 U.S. 600, 608-610 (2004). Thus, a narrow rationale exists "for permitting a facial challenge, in the rare case where one is permissible." *Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010). "To raise the rare and permissible facial challenge, First Amendment rights must be implicated." *Lluberes v. City of Troy*, 2014 WL 1123413, at *13 (N.D.N.Y. Mar. 21, 2014). As facial challenges are relatively rare, the vast bulk of constitutional challenges, including many pre-enforcement challenges, are *as-applied*. Defendant's distinction, if accepted, would invalidate myriad precedents for lack of standing.

>    **7.   Pre-Enforcement Standing Is Clearly Established Here: Peck.**

Plaintiffs' pre-enforcement challenge is proper due to the "credible fear" that Defendant's HCSM policy will be "enforced against" them. *Peck*, 43 F.4th at 1132. Regardless whether *Peck* is distinguishable (per Defendant), it efficiently summarizes binding precedent. *See supra* at §III(J) (even dicta may bind). Under such precedent, Plaintiffs have shown credible fear. VC ¶¶57-99.

>    (a) *The Three Main Factors for Pre-Enforcement Challenges.*

"[The] three factors [for] determining a credible fear [or threat of enforcement are]: **(i)** whether the plaintiff showed past enforcement against the same conduct; **(ii)** whether authority to

---

[4] Cases may discuss the "face" of a statute *descriptively*: "challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage." *Darren Patterson Christian Acad. v. Roy*, ___ F.Supp.3d ___, 2023 WL 7270874, at *5 (D.Colo. Oct. 20, 2023). This does not necessarily mean a *facial challenge*.

initiate [legal action is] limited to a [state] agency [or whether] any person could file a complaint against the plaintiffs; and **(iii)** whether the state disavowed future enforcement." *Peck*, at 1132.[5]

(b) *Not All Three Factors Are Required.*

Plaintiffs need not show all three factors if the threat is sufficiently credible or evident. For example, the fear/threat of enforcement "is generally credible where a challenged 'provision on its face proscribes' the conduct in which a plaintiff wishes to engage, and the state 'has not disavowed any intention of invoking [the] provision' against the plaintiff." *Frank*, 84 F.4th at 1133.

(c) *Evidentiary Bar Is 'Extremely Low' in this First Amendment Case.*

"First Amendment context [leads] us to apply the standing requirements somewhat more leniently, facilitating pre-enforcement suits." Peck, 43 F.4th at 1129. "As to whether a First Amendment plaintiff [like Samaritan] faces a credible threat of prosecution, the *evidentiary bar that must be met is extremely low*." *Id*. at 1133 (citation omitted; emphasis added).

(d) *Plaintiffs Meet this 'Extremely Low' Standard Many Times Over.*

Plaintiffs need only show, at most, *some* evidence **(i)** of "past enforcement against nearly identical conduct" and the state's failure "to disavow future enforcement," *303 Creative*, 6 F.4th at 1174, **<u>or</u> (ii)** that the challenged policy "on its face proscribes the conduct in which [Samaritan] wishes to engage, and the state has not disavowed any intention of invoking [it] against the plaintiff," *Frank*, 84 F.4th at 1133. Plaintiffs can show *all* these factors with *abundant* evidence.

(e) *Factor 1: OSI Has Enforced & Is Enforcing vs. 'Similar Conduct.'*

"A history of enforcement proceedings against similar conduct weighs in favor of a finding that plaintiffs' fears of enforcement are well-founded." *Brown*, 86 F.4th at 767. <u>First</u>, OSI's "unnecessarily aggressive" (VC ¶107) action against Samaritan's peer Gospel Light is more than

---

[5] Cleaned up. *See also Brown v. Kemp*, 86 F.4th 745, 767 (7th Cir. 2023) ("similar conduct").

just "some example" of "past enforcement" against "similar" or "nearly identical" conduct in which Samaritan "wishes to engage." *Id*; *303 Creative*, 6 F.4th at 1174; *Frank*, 84 F.4th at 1133. It is an aggressive *ongoing* action against the *same* kind of conduct in which Samaritan *has been engaged* in *New Mexico* for *27 years*. Second, Defendant also has pursued several other HCSMs. Third, OSI's policy of subjecting all HCSMs to the Code, based on its sweeping new interpretation of *insurance*, "on its face proscribes the conduct in which [Samaritan] wishes to engage." *Frank*, 84 F.4th at 1133. Fourth, Defendant is systematically closing all HCSMs in New Mexico. Fifth, there is nothing "abstract" about this dispute. MTD at 6. Sixth, the "effects" of OSI's policy are felt even now "in a concrete way," MTD at 6, as the VC alleges, e.g., ¶326 (past/ongoing harm to ministry membership), ¶¶370-488 (past/ongoing harms to the organizational Plaintiff and the ten individual Plaintiffs). Thus, Samaritan "credibly fears enforcement that would certainly cause [its] alleged First Amendment deprivations." *Darren*, 2023 WL 7270874, at *7 n.3; *accord Bella*, 2023 WL 6996860, at *7-10. The strength of this factor alone establishes Plaintiffs' standing.

(f) *Factor 2: OSI—and/or 'Any Person'—May Initiate Legal Action.*

If even needed, this factor also is clearly established. The threat from Defendant's anti-HCSM policy is not limited to OSI-initiated action. NMSA 1978, §59A-16-30 ("Private right of action"). As in *Colo. Union of Taxpayers v. Griswold*, 2023 WL 5426581 (10th Cir. Aug. 23, 2023) (unpub.): "Any person can file a complaint." *Id*. at *8. "Anyone can file a complaint for violating the requirements imposed on [insurers]." *Id*. at *4. *303 Creative* upheld standing partly because the state law there "allowed 'any person' to file a complaint against the plaintiff." *Darren*, 2023 WL 7270874, at *8. Since anyone can "initiate a lawsuit that, on its own, would jeopardize Plaintiff's [non-insurance status ***and***] anyone may file a complaint with the [Insurance] Department that would do so," *id*., Samaritan remains in *double* jeopardy every day. Further, "even if [OSI] were to issue an advisory opinion favoring [Samaritan], the opinion wouldn't prevent

18

anyone [else] from filing a complaint." *Griswold*, 2023 WL 5426581, at *5.

     (g) *Factor 3: OSI Has 'Not Disavowed' Future Enforcement.*

   If even needed, this factor also is clearly established. Defendant has already enforced its anti-HCSM policy to prevail over four HCSMs. Far from "disavowing" such enforcement policy, *Darren*, 2023 WL 7270874, at *8-11; *Bella*, 2023 WL 6996860, at *11-12, Defendant continues to aggressively pursue Gospel Light, VC ¶¶103-110—Samaritan's peer. This actual, ongoing enforcement posture against HCSMs like Samaritan is the very antithesis of disavowal.

     (h) *Additional Factor: Nothing Even Resembling an HCSM Is Safe.*

   Defendant's counsel stated in this Court that OSI would have "no choice" but to enforce the Code against five church members getting together to share medical expenses if their activities fit OSI's sweeping new insurance definition for HCSMs. VC ¶¶233-242. If five church members staying after service to arrange sharing are in jeopardy, then surely Samaritan is in jeopardy every day, despite its unblemished service record nationwide for three decades. To quote this Court again, Defendant and OSI are essentially telling Samaritan, just as they told Liberty, "well you know[,] you've been in operations [here] for years, but now we're coming for you." VC ¶107.

     (i) *Plaintiffs Clearly Meet 'Extremely Low' Standard for Standing.*

   In First Amendment cases like ours, the "evidentiary bar" for standing is "extremely low." *Peck*, 43 F.4th at 1133. Yet the evidence for it here is extremely high. *See* VC ¶¶61-360. To the extent Defendant's other ripeness arguments merit attention, they fail under the above analysis. For example, Plaintiff's pre-enforcement challenge is "fit for review," MTD at 8, since Defendant has not only "arrived at a definitive position," MTD at 10, and not only applied that position to five HCMS, but is aggressively defending that position in litigation against Gospel Light in both state and federal court. Given Defendant's ongoing litigation posture, there can be no "hardship" to Defendant of allowing "court consideration" of Samaritan's case. MTD at 8. The hardship to

Plaintiffs of withholding that court consideration is plain. *E.g.*, VC ¶326 (past/ongoing harm to membership), ¶¶370-488 (past/ongoing harms to Samaritan and individual Plaintiffs).

(j)  *OSI Must Disavow Its 'Policy'—Not Just Its 'Enforcement Here.'*

The threat to Plaintiffs is real and will persist daily until either **(i)** OSI *disavows* its sweeping new definition of insurance for HCSMs or **(ii)** this Court declares or enjoins the same result. It makes no difference whether Defendant currently is or is not *privately* "contemplat[ing]" an *action against Samaritan*. MTD at 7. Even a written *disavowal* of intent to *enforce against Samaritan* is insufficient, since OSI's sweeping insurance policy for HCSMs exposes Samaritan to a "private right of action." NMSA 1978, §59A-16-30. Indeed, "even if [OSI] were to issue an *advisory opinion* favoring [Samaritan], the opinion *wouldn't prevent anyone [else] from filing a complaint*." *Griswold*, 2023 WL 5426581, at *5 (emphasis added). Therefore, Defendant must: **(i)** abandon OSI's flawed policy and practice as applied to HCSMs, **(ii)** reinstate its former policy and practice as applied to HCSMs, and **(iii)** thus return to the fold of insurance regulators everywhere, lest anyone initiate a private action against Samaritan under OSI's rogue policy.[6]

8.      ***'Facial' and 'As-Applied' 'Labels' Are 'Nebulous' and Not Dispositive.***

"'[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.'" *Sup. Ct. of New Mexico*, 839 F.3d at 907. "[The] facial or as-applied … label is not what matters," *id*. (cleaned up), as they "can overlap conceptually," *id*. "Facial challenges are not sharply categorically distinct from as-applied[.]" *Id*. at 908. "'[T]he line between facial and as-applied relief is a fluid one, and many constitutional challenges may

---

[6] "A case becomes moot *only when it is impossible* for a court to grant '*any effectual relief whatever*' to the prevailing party." *Knox v. SEIU No. 1000*, 567 U.S. 298, 307 (2012) (cleaned up; emphasis added).

occupy an intermediate position on the spectrum[.]'" *Id*. "[T]his case highlights [the] nebulous nature of the distinction[.]" *Id*. "This proposition is especially relevant here [where plaintiff's] claim 'obviously has characteristics of both' a facial and as-applied claim." *Id*. Plaintiff's "preemption claim has characteristics of both a 'facial' and an 'as-applied' challenge." *Id*. at 912.

The VC's 1,770 paragraphs allege sufficiently *facial* claims to fit that *fluid and nebulous label*. The VC challenges the "face" of OSI's HCSM policy "as-applied" to Plaintiffs, because that policy "on its face proscribes the conduct in which a plaintiff wishes to engage." *Darren*, 2023 WL 7270874, at *5. If necessary, then, the Court should treat Plaintiffs' claims against the operation or effect of the "face" of the policy as sufficiently "facial" for ripeness.

### 9.      If 'Facial Label' Disables the VC, Plaintiffs Seek Leave to Amend It.

If necessary, Plaintiffs seek leave to amend to separately allege clearer facial challenges.

### C.      Count 14 for Federal Preemption States a Valid Claim.

Defendant asserts the McCarren-Ferguson Act "does not define insurance for purposes of determining whether a state regulation is entitled to reverse preemption." MTD at 11-12. This is wrong for several reasons. <u>First</u>, MFA's "reverse preemption" and reservation of *insurance* regulation to the States is available only for the "business of insurance," which is a federally defined term because MFA is federal law. VC ¶¶160-69 (discussing *SEC v. Variable Annuity Life Ins. Co*, 359 U.S. 65 (1959)). Defendant ignores *Variable Annuity* and its implications: "business of insurance" is a term of federal law defined by federal cases. VC ¶¶686-707, 1674-1730.

<u>Second</u>, *Air Evac* directly contradicts Defendant. VC ¶163. *Air Evac* held an insurance commissioner's "enforcement threat against" a "Membership Program" like Samaritan's did not "involve regulation of the business of insurance" under the MFA. 523 F.Supp.3d at 872, *aff'd on other grounds*, 37 F.4th 89. "The Defendant has presented nothing to counter Air Evac's evidence that the Membership Program provides … *no indemnification*. The [MFA] applies *only to*

*regulation of the business of insurance.* Air Evac is likely to prevail in demonstrating that its

Membership Program is *not insurance*, and therefore that *any state regulation of it is preempted*[.]

The Defendant's *efforts to employ a broad definition of 'insurance'* to reach Air Evac's program

… is unlikely to alter that outcome." *Id*. at 873 (emphasis added). Just so here. VC ¶163.

      <u>Third</u>, that NMSA 1978, §59A-16-21.2, one of the four "primary" sections of the Insurance

Code cited by Defendant as relevant to its *Gospel Light* litigation, MTD at 13 & n.8, deals with

"health benefits plans," is irrelevant. All four sections cited by Defendant, MTD at 13 & nn.5-8,

are based explicitly on the definition of "insurance." In this respect, §59A-16-21.2 is circular. It

defines a "health benefits plan" as one "offered or issued by a health insurance carrier," and "health

insurance carrier" as an "entity subject to the insurance laws and regulations of this state." *Id*.[7]

### D.    Count 16 Under New Mexico RFRA Survives Sovereign Immunity.

      Defendant asserts that Count 16 under the New Mexico Religious Freedom Restoration

Act, NMSA 1978, §§28-22-1 *et seq*., "is barred by the Eleventh Amendment," MTD at 13-14, and

thus the NMRFRA "does not allow the Plaintiffs to bring claims against the Superintendent of

Insurance, *in her official capacity*, in federal court," *id*. (emphasis added). This assertion is error.

      <u>First</u>, this assertion, true or not, has no effect on the *individual-capacity* NMRFRA claim

and Defendant does not argue otherwise. That should suffice for Count 16 to survive this MTD.

      <u>Second</u>, as for the *official-capacity* NMRFRA claim, it may fall under the consent or

---

[7] Defendant includes §59A-15-16, which has a discretionary, rebuttable presumption that anyone providing "coverage" for "health benefits" is "subject to the provisions of the Insurance Code and the jurisdiction of the superintendent unless the person provides evidence satisfactory to the superintendent that …." *Id*. This provision establishes a presumption, not jurisdiction. It also is circular, like Defendant's use of *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 458-59 (1969). MTD at 12-13. *Nat'l Sec* emphasized **relationship** in analyzing the *business* side of insurance—e.g., activities of persons engaged in the **business of insurance**—to distinguish "insurance regulation [from] securities regulation." 393 U.S. at 460. The term "business of insurance" includes two terms of art: *business* and *insurance*. To the extent *Nat'l Sec* is relevant here, it broadly defined the term consistently with Samaritan's arguments: "Statutes aimed at protecting or regulating this **relationship**, directly **or indirectly** are laws regulating the 'business of insurance.'" *Id*. (emphasis added).

abrogation exceptions to the Eleventh Amendment's guarantee of sovereign immunity. *Frank*, 84 F.4th at 1131. Defendant is sued in both her official and her personal capacities, and NMRFRA permits both types of "claim[s] in a judicial proceeding [to] obtain appropriate relief," including "injunctive or declaratory relief," "damages," and "attorney fees and costs." §28-22-4(A). NMRFRA also waives sovereign immunity for the "government agency and its employees," §28-22-4(B), and nowhere confines NMRFRA "claims" to state court or inhibits a proper NMRFRA claim from joining a proper federal claim in federal court.

Third, this Court has a "virtually unflagging" obligation to hear this case, *303 Creative*, 6 F.4th at 1176, over whose claims (federal and state) this Court has original and supplemental jurisdiction. VC ¶¶520-534. The existence of jurisdiction trumps sovereign immunity in this context. Otherwise, the many federal-court State-RFRA decisions (e.g., those cited in the VC at ¶¶528-32) would have dismissed the State RFRA claims on sovereign-immunity grounds.

Fourth, this Court has original jurisdiction over Count 16 (NMRFRA) because it raises a "substantial federal question." VC ¶¶524-26. Substantial federal questions arise because Plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law," or because "vindication" of Plaintiffs' rights "necessarily turn[s] on some construction of federal law." ¶526 (citing cases). Both grounds apply here—relating to *preemption* of state law, ¶526, and to state-court reliance on federal law to decide state religious-freedom claims, ¶¶528-32. *See Thai Meditation Ass'n of Alabama v. City of Mobile*, 83 F.4th 922, 930-32 (11th Cir. 2023) ("*TMAA*") (enjoining City based solely on State RFRA claim because City failed strict scrutiny under federal precedent). Just as *TMAA* looked to federal law to decide a State RFRA claim, the state and federal courts of New Mexico look to federal law to decide state religious-freedom claims. *Elane Photography, LLC v. Willock*, 284 P.3d 428, 441 (N.M.App. 2012), *aff'd*, 309 P.3d 53 (N.M. 2013)

(quoting *Friedman v. Bd. of Cnty. Comm'rs,* 781 F.2d 777, 792 & n. 6 (10th Cir. 1985) (cleaned up). "As this Court and the Tenth Circuit have both treated [the state free exercise clause] as coextensive with its federal counterpart, we will continue to use *federal standards* to analyze [plaintiff's state] free exercise of religion claim." *Id*. at 441. Just so here.

Fifth, in any event, since fully 15 of the 16 Counts of the VC are wholly federal, the Court should refrain from dismissing the sole, closely intertwined state Count 16 at this stage. "[U]nless one of the conditions of 28 U.S.C. §1367(c) exists, courts are not free to decline jurisdiction." *Ganley v. Jojola*, 402 F.Supp.3d 1021, 1077 (D.N.M. 2019) (citing cases); VC ¶527.

Sixth, it is impossible for this Court to decide supplemental jurisdiction on Count 16 unless and until all 15 federal Counts are dismissed. VC ¶¶528-32. The NMRFRA claim cannot properly be dismissed on jurisdictional grounds unless all "federal claims are dismissed before trial," *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966), indeed, "early in the litigation," *Barnett v. Hall, Estill*, 956 F.3d 1228, 1232 (10th Cir. 2020); *accord Birdwell v. Glanz*, 790 F.App'x 962, 964 (10th Cir. 2020). Even after disposing of all federal claims, *TMAA* ruled for plaintiff on its State RFRA claim, which would be impossible under Defendant's theory here.[8]

### E. All Sixteen Personal-Capacity Claims Survive MTD on Qualified Immunity.

Defendant asserts that all personal-capacity claims for damages should be dismissed on grounds of qualified immunity (QI). MTD at 15-16. This immunity might protect Defendant only if her "conduct [i] does not violate clearly established statutory or constitutional rights [ii] of which a reasonable person would have known." *Rosales*, 72 F.4th at 1150 (10th Cir.). While "courts need not consider these two prongs in any particular order, 'it is often beneficial' to first assess

---

[8] *TMAA* remanded for fact finding on RLUIPA, but it "direct[ed] the district court to enter judgment" for plaintiff on its State RFRA claim, 83 F.4th at 932, irrespective of any viable federal claim.

constitutional violation before considering clearly established law." *Id*. at 1151. Neither prong can be properly considered here at the MTD stage, as explained *supra* in §§III.G & III.H.

First, to determine if constitutional or NMRFRA rights were violated requires "exacting" and "extremely fact-specific" "strict scrutiny." §III.H.1. "'[A] more fully developed record [is] needed to resolve the [i] compelling interest and [ii] narrowly tailored inquiries.'" §III.H.2. **In fact:** "Without a developed record, it is not possible to answer the 'narrowly tailored' question in this case at this motion-to-dismiss stage." *Id*. Such an inquiry must await summary judgment or trial, since undeveloped records require remand. "We therefore REMAND these cases to afford both parties an opportunity to develop a record, and for a determination as to whether these regulations represent the least restrictive means of advancing the government's interests." *Id*. "[T]he more appropriate course of action would be to remand to the district court for further development of the record." *Id*. "[W]e vacated the District Court's dismissal of the plaintiffs' [claims] because the plaintiffs should have been 'afforded the opportunity to conduct discovery and develop the record regarding whether the Statutes are narrowly tailored[.]'" *Id*. Remand often is required even for lesser scrutiny, such as "intermediate First Amendment scrutiny." *Id*.

Second, to determine if such rights were clearly established requires QI's fact-specific inquiry, which is rarely appropriate on MTD. At this "motion-to-dismiss stage," where "defendant asserts qualified immunity on the pleadings, [the] court will assess 'defendant's conduct *as alleged in the complaint*.'" *Rosales*, 72 F.4th at 1151. "'[I]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." §III.G.3. "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." §III.G.2. Accordingly, "dismissal for failure to state a claim on qualified immunity grounds is generally

inappropriate." §III.G.1. In sum, "'qualified immunity defenses are typically resolved at the summary judgment stage' rather than on a motion to dismiss." §III.G.4.

<u>Third</u>, Defendant also asserts again (*see supra* at §IV.B.6) that "contingent" aspects of pre-enforcement challenges insulate her QI defense. MTD at 16. This assertion is error. Damage claims and QI defenses can co-exist in pre-enforcement challenges under §1983. *E.g.*, *City Union Mission v. Sharp*, 36 F.4th 810 (8th Cir. 2022) (religious homeless-shelter challenged state law that excluded sex-offenders from vicinity of public parks containing playground equipment). *Sharp* is instructive. There, prospective relief became moot when Sheriff Sharp resigned and "the County took the position that it will not revive *Sheriff Sharp's interpretation of [the state law]* or prosecute [the shelter's homeless clients] for seeking [its] services." *Id*. at 816 (emphasis added). As for damages, Sheriff Sharp received QI because the rights there were held *not clearly established*. *Id*. at 817. There was no suggestion that damages were otherwise inappropriate. *See also D.H. v. City of New York*, 309 F.Supp.3d 52 (S.D.N.Y. 2018) (pre-enforcement challenge by transgendered women under §1983 seeking prospective and monetary relief). "[Defendants] have not 'met their required burden of demonstrating the nonexistence of a clearly established right,' and qualified immunity is inappropriate at this juncture." *Id*. at 74 n.7. Just so here.

As for prospective relief, Plaintiffs seek Defendant's pledge (or else this Court's order) that she abandons (or else this Court enjoins) her "interpretation" of the Insurance Code that violates Plaintiffs' rights. As for monetary relief, Plaintiffs seek damages from Defendant for the harm her misconduct has caused and continues to cause. *See esp*. VC ¶¶2-23 (overview of case); 892-912 (overview of harm); 1114-1135 (evidence of invidious discrimination); 1430-1460 (Count Four: Invidious Treatment). *See generally* ¶¶385-488 (written testimony of Samaritan and the individual Plaintiffs); 1303-1569 (Counts One to Ten). *See also* 103-131, 195-246, 314-350, 489-519, 641-

659, 738-856, 874-889, 913-983, 1058-1082, 1164-1178, 1193-1120, 1239-1246.

Fourth, Defendant also asserts that Plaintiffs must identify her own "individual" actions (misconduct) that violated constitutional rights. MTD at 16. As Plaintiffs have explained from the start of their 1,770-allegation VC, "Defendant did not merely inherit this campaign; she has intensified it." VC ¶2. Defendant has presided over the worst of OSI's anti-HCSM campaign, including its recent escalation. VC ¶¶2-350 (detailed overview); 738-983 (anti-HCSM campaign). "'A §1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.'" *Sawyers*, 962 F.3d at 1277 n.3 (10th Cir.). Discovery will illuminate this.

### F.    All Fifteen Federal Counts Properly Plead Defendant's Personal Liability.

Assuming this argument is challenging all 15 federal Counts, MTD at 16-17, it fails. First, to the extent Defendant challenges the *official-capacity* §1983 claims, that challenge was refuted above. §§II.B, IV.A, & IV.B. "To satisfy [*Ex parte Young*], the named state official [need only] have some connection with the enforcement of the challenged statute—a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Frank*, 84 F.4th at 1132 (10th Cir.) (cleaned up). "Some connection" has been more than sufficiently pled. *See* VC cites in preceding section (§IV.E). Second, to the extent that Defendant here is challenging the *personal-capacity* §1983 claims by reasserting her argument from the prior section (§IV.E) that Plaintiffs must plead that Defendant violated the constitution "through [her] own individual conduct," MTD at 17-18, Plaintiffs satisfied this requirement in the previous section (§IV.E).

## V.    CONCLUSION.

Defendant's Motion to Dismiss should be denied in its entirety. To the extent the MTD raises any interesting or close questions, they should be resolved at summary judgment or trial.

Dated this 20th day of February, 2024

Respectfully submitted,

GAMMON & GRANGE, P.C.

 /s/  J. Matthew Szymanski
J. Matthew Szymanski, Esq.
Bar No. 23-267 (lead counsel)
Ph./Fx. (703) 761-5030
JMS@gg-law.com

Scott J. Ward, Esq.
Bar No. 23-361 (co-counsel)
Ph./Fx. (703) 761-5012
SJW@gg-law.com
1945 Old Gallows Road, Suite 650
Tysons, VA 22182

J. BRIAN HELLER, P.C.

J. Brian Heller, Esq.
Associated Counsel (as of 1/9/2024)
200 Walnut Street
Washington, Illinois 61571
jbhpc@comcast.net
Ph. (309) 444-9223
Fx. (309) 444-9723

Attorneys for the Plaintiffs