**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SAMARITAN MINISTRIES INTERNATIONAL, a religious Illinois non-profit corporation,
6000 N. Forest Park Drive
Peoria, Illinois 61614,

and ten of its New Mexico members, namely,

ZACHARY & RACHEL CORDEL, 662 CR F, Clovis, New Mexico 88101,

DAVID ALLAN & MONETTE BELL, 3 Mountain Vista Trail, La Luz, NM 88337,

REV. ANDREW & HEATHER HEATH, 1310 Meadow Lane, Roswell, NM 88203,

JAY & AMY O'NEILL, 275 Blue Sky Lane, Mesilla Park, NM 88047, and

REV. NATHAN & REBEKAH BIENHOFF, 3501 Highland Road, Roswell, NM 88201,

*Plaintiffs*,

v.

ALICE T. KANE, in her personal capacity and in her official capacity as the Superintendent of Insurance for New Mexico, 1120 Paseo de Peralta 4th Floor, Santa Fe, NM 87501,

*Defendant*.

**Case No. 1:23-cv-01091-MIS-SCY**

**Jury Trial Requested**

**SAMARITAN AND INDIVIDUAL PLAINTIFFS' SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

Table of Contents

I. INTRODUCTION. ........ 1

A. Arguments Raised for 'First Time in Reply' Are 'Waived.' ........ 1

B. Plaintiffs Do Not 'Seek to Recast Their Challenge as Facial.' ........ 1

C. Any 'Regulatory Authority Over' the Individual Plaintiffs Is Irrelevant. ........ 1

D. This Case Does Not Rest 'Entirely on Contingent Future Events.' ........ 2

1. *Defendant's Judicial Admissions Reaffirm Standing and Ripeness.* ........ 2
2. *Defendant Has Inflicted Past, Ongoing, and Imminent Harms.* ........ 2

II. ARGUMENT (Tracking Defendant's Reply, Doc. 20). ........ 3

A. Defendant Is Harming Both 'Categories of Plaintiffs.' ........ 3

B. Defendant Cannot Dismiss the 'Personal Capacity Claims' on QI Grounds ........ 4

1. *Plaintiffs Need Prove Nothing at this Stage, Only Plausibly Allege.* ........ 4
2. *Plaintiffs Need Not Identify a Supreme Court or Tenth Circuit Case.* ........ 4
3. *Plaintiffs' Cases Need Not Be 'Precisely' 'On Point' or 'Parallel.'* ........ 4
4. *Plaintiffs' Cases Need Only Avoid a 'High Level of Generality.'* ........ 4
5. *QI Only Exists to Protect 'Mistaken But Reasonable Decisions.'* ........ 5
6. *MTDs on QI Grounds Are 'Perilous' and 'Generally Inappropriate.'* ........ 5
7. *Plaintiffs Allege Defendant's Own Misconduct, Personal Involvement.* ........ 5
8. *'Key' Issue: Defendant Had More than 'Fair Warning' of the Law.* ........ 6

C. Defendant Cannot Dismiss on 'Pre-Enforcement Standing' Grounds. ........ 6

1. *Defendant's Promised Counterclaim Proves 'Credible Threat.'* ........ 6
2. *Defendant Misunderstands the Relevance of 303 Creative.* ........ 7
3. *Any 'Regulatory Authority' Over 'Individual Plaintiffs' Is Irrelevant.* ........ 8

D. Defendant Misstates 'Air Evac' and Risk of 'Third-Party Legal Action.' ........ 8

1. *Samaritan Could Be Subject to Legal Action by Myriad Third Parties.* ........ 8
2. *Samaritan Correctly Explains and Relies on Air Evac.* ........ 9

E. Defendant Overstates the 'Facial/As-Applied' Distinction. ........ 10

1. *This Lawsuit Involves Challenges to Both a Statue and a Policy.* ........ 10
2. *Plaintiffs Facial Challenge Applies Only to the HCSM 'Policy.'* ........ 11
3. *Court-Created Exemptions Simply Enjoin Invalid Applications of Law.* ........ 11
4. *Plaintiffs' Claims Rest on Past, Ongoing, and Imminent Harms.* ........ 11
5. *Plaintiffs' Claims Meet All Ripeness Tests (Prudential or Otherwise).* ........ 12
6. *McCarran-Ferguson Is Interpreted & Defined by Federal Case Law.* ........ 12

III. SUPREME COURT'S UNANIMOUS DECISION IN FIKRE APPLIES. .................. 13

A. Fikre Just Reinforced this Court's Duty to Hear this Case. ................................ 14

B. Fikre Further Establishes Ripeness (Jurisdiction) Here. ..................................... 14

C. Fikre Illustrates the Harm Inflicted and Relief Required Here.......................... 14

D. Fikre Illustrates the Relative Insignificance of Defendant's Interests Here. ..... 15

E. Fikre Further Compels Denial of Defendant's Motion to Dismiss.................... 15

## I. INTRODUCTION.

This brief focuses on Defendant's Reply (Doc. 20) to Plaintiffs' Opposition (Doc. 19) to Defendant's Motion to Dismiss (Doc. 4). This introduction addresses three overarching errors.

### A. Arguments Raised for 'First Time in Reply' Are 'Waived.'

As discussed below, many of Defendant's "issues and arguments [are] raised for the first time in [her] reply brief" and are therefore waived. *Springer v. Seventh Jud. Dist. Ct.*, 2023 WL 7130541, at *2 (D.N.M. Oct. 30, 2023) (Strickland, J.); *accord* Pls. Reply at 2-3 (citing cases).

### B. Plaintiffs Do Not 'Seek to Recast Their Challenge as Facial.'

Defendant suggests "Plaintiffs now seek to modify their theory from a 'pre-enforcement as-applied' challenge to a 'facial' challenge," Reply at 2, to avoid constitutional jurisdictional limits. Not so. Plaintiffs simply acknowledge that the "'Constitution deals with substance,' not strategies." *FBI v. Fikre*, 144 S.Ct. 771, 777 (2024). In substance, this suit challenges Defendant's HCSMs-are-now-insurance policy (facially and as-applied) and the Code (as-applied). Thus, this "pre-enforcement as-applied" suit might best be understood as "a variety of challenges to [statute and policy], some facial, some as applied, some pre-enforcement, some [rapidly approaching]-enforcement." Pls. Opp. at 15 (quoting *Wy. Gun Owners*, 83 F.4th at 1232).

### C. Any 'Regulatory Authority Over' the Individual Plaintiffs Is Irrelevant.

Defendant insists she lacks "regulatory authority over" the individual Plaintiffs, who "simply fail to [show] they are subject to a credible threat of either civil or criminal prosecution." Reply at 7. This argument fails. First, it appears to be new and thus waived. *Supra* at §I.A. Second, state officials never have authority to violate the Constitution. If Defendant also lacks regulatory authority, her actions are *more* ultra vires. Third, Defendant's actions harm both sets of Plaintiffs jointly and individually. (a) Some harm is *joint* because it affects both sets the same. Samaritan is

no "third party" to its members. Reply at 5. The members *are* the ministry: they control its Board and directly conduct its ministry. (b) Some harm is *individual* because it is personal to members. Defendant is threatening to deprive them of their chosen form of worship and their expressive associational religious activities through prayer and gifts to their fellow members. If Defendant's view were correct, parishioners would suffer no harm if she shut down their church.

**D. This Case Does Not Rest 'Entirely on Contingent Future Events.'**

Defendant says this suit is an "abstract disagreement," MTD at 6, none of whose "effects" have been "felt in a concrete way," *id*. Thus, Defendant continues to insist that Plaintiffs' claims rest "entirely on contingent future events that may not occur." Defs. Reply at 5, 11.

***1. Defendant's Judicial Admissions Reaffirm Standing and Ripeness.***

Defendant's new admissions reaffirm standing and ripeness (jurisdiction). First, Defendant now says that "Samaritan [is] an entity that engages in an activity that fits New Mexico's statutory definition of insurance." Reply at 2. Second, assuming Defendant is to do her duty, and avoid selective-prosecution claims by Liberty, she must apply her same aggressive HCSM policy to Samaritan. Third, Defendant promises to do just that, saying she will counterclaim to "litigat[e] the dispute whether Samaritan is engaged in the business of insurance." *Id*. at 6. These admissions do indeed establish jurisdiction. But litigation of *that dispute* is not *necessary* to decide the pending motions. Even if it is assumed without deciding that Defendant might have enough discretion to stretch the insurance label to fit Samaritan, she cannot apply the Code to infringe Plaintiffs' First Amendment rights. *See* VC (Doc. 1); Pls. MFPI (Doc. 10); Pls. Reply (Doc. 21).

***2. Defendant Has Inflicted Past, Ongoing, and Imminent Harms.***

To be sure, Defendant's misconduct does threaten imminent harm sufficient for standing and ripeness. Pls. Opp. at 12-21. But it also *has inflicted* concrete harms arising from concrete constitutional violations, justifying not just jurisdiction but damages. First, the threats of ruinous

fines, expulsion from New Mexico, loss of critical federal legal statuses, and other imminent harms have compelled Samaritan to turn away all new members in New Mexico; these turn-aways now total at least 17. VC ¶¶893, 326; Pls. Reply (Doc. 21) at 17. Second, these threats have distracted Samaritan from its ministry and cost it dearly to protect it. VC ¶¶895-902, 957, 1287. Third, these threats have harmed Samaritan's reputation. VC ¶¶328, 393-98, 898-99; Pls. MFPI (Doc. 10) at 22. Fourth, the loss of new members, diversion of resources, dilution of mission, and loss of reputation represent loss not just of resources but of fellowship, spiritual power and healing, and expressive and associational religious liberty *for each individual Plaintiff*. Each of these harms is concrete, has already occurred, and is still occurring. Each is *uncontested*. Most are *irreparable*.

## II. ARGUMENT (Tracking Defendant's Reply, Doc. 20).

### A. Defendant Is Harming Both 'Categories of Plaintiffs.'

Defendant's argument distinguishes Samaritan (organizational Plaintiff) from ten of its New Mexican members (individual Plaintiffs). Defs. Reply at 2-3. It begins by asserting that Samaritan "engages in an activity that fits New Mexico's statutory definition of insurance." *Id*. at 2. It next addresses the individual Plaintiffs, noting that they have never "been subject to any enforcement action" and faulting them for not showing "that the Defendant has any legal authority to take enforcement action against them." *Id*. at 2-3. It is unclear why these distinctions matter. If Defendant's conduct infringes the constitutional rights of the individual Plaintiffs, it is irrelevant whether she had regulatory authority to act as she did. Otherwise, many constitutional violations would be immunized. For example, a county sheriff who conducts a racially-motivated stop-and-frisk outside his county could shield his misconduct by asserting he lacked authority to act outside his territory. Lack of regulatory authority does not excuse the infraction; it compounds it.

**B. Defendant Cannot Dismiss the 'Personal Capacity Claims' on QI Grounds.**

This argument pursues qualified immunity (QI). Defs. Reply at 4-6. It faults Plaintiffs for having neither (a) "shown" that the Defendant herself "caused the deprivation of a federal right" nor (b) "identified" a "decision of either the Supreme Court or the Tenth Circuit holding that an official violated the law under similar circumstances." This argument errs for many reasons.

***1. Plaintiffs Need Prove Nothing at this Stage, Only Plausibly Allege.***

As Defendant concedes: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 5. Does Defendant truly mean to argue that none of the "facts alleged" in Plaintiffs' 366-page VC and 68 incorporated exhibits plausibly "show" that Defendant's "conduct violated a constitutional right"?

***2. Plaintiffs Need Not Identify a Supreme Court or Tenth Circuit Case.***

Defendant insists on Supreme Court or Tenth Circuit cases. *Id*. at 4. But the "law is clearly established when there is an 'on point' Supreme Court or Tenth Circuit decision, 'or the clearly established weight of authority [elsewhere finds] the law to be as the plaintiff maintains.'" *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022); *accord Rosales v. Bradshaw*, 72 F.4th 1145, 1156 (10th Cir. 2023); *Packard v. Budaj*, 86 F.4th 859, 867 (10th Cir. 2023).

***3. Plaintiffs' Cases Need Not Be 'Precisely' 'On Point' or 'Parallel.'***

QI law "does not require a case directly on point for a right to be clearly established." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021); *Packard*, 86 F.4th at 868 ("precisely on point"). It is "not a scavenger hunt" for close cases, "and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law.'" *Id*. at 869.

***4. Plaintiffs' Cases Need Only Avoid a 'High Level of Generality.'***

"We must be careful not to define clearly established law 'at a high level of generality.'" *Paugh*, 47 F.4th at 1167; *Cortesluna*, 595 U.S. at 6. But "'the unlawfulness [may be] sufficiently

clear even though existing precedent does not address similar circumstances[.]'" *Rosales*, 72 F.4th at 1156. "[O]bviously unlawful things [may] happen so rarely that a case on point is itself an unusual thing." *Id*. "Thus, [QI] does not protect an officer where the constitutional violation was [sufficiently] obvious under general well-established constitutional principles[.]" *Id*. at 1157. "Even in novel factual circumstances, 'officials can still be on notice[.]'" *Packard*, 86 F.4th at 869.

### 5. *QI Only Exists to Protect 'Mistaken But Reasonable Decisions.'*

"Qualified immunity 'exists to protect mistaken but reasonable decisions[.]'" *Rosales*, 72 F.4th at 1158. It does not exist to protect "'the plainly incompetent or those who knowingly violate the law.'" *Packard*, 86 F.4th at 865; *accord Rosales*, 72 F.4th at 1156; *Paugh*, 47 F.4th at 1153.

### 6. *MTDs on QI Grounds Are 'Perilous' and 'Generally Inappropriate.'*

As noted, MTDs on QI grounds are "generally inappropriate," "often perilous," and "almost always a bad ground for dismissal." Pls. Opp. 5-6. "[I]t is not possible to determine at this [MTD] stage as a matter of law that [Samaritan] has not alleged a violation of clearly established law." *Navab-Safavi v. Glassman*, 637 F.3d 311, 318 (D.C. Cir. 2011) (First Amendment case). "The Board asserts its qualified immunity, but we are unable to determine without an evidentiary record whether any [of its acts] constituted a violation of clearly established rights[.]" *Id*.

### 7. *Plaintiffs Allege Defendant's Own Misconduct, Personal Involvement.*

First, Plaintiffs sufficiently pled Defendant's own role and conduct in their constitutional claims. VC ¶¶515-518; *see also* 1-23, 489-519, 889, 1066, 1111. Second, Defendant has chosen to maintain OSI's anti-HCSM campaign and even intensify it, seeking and obtaining a TRO against Liberty. *See* 8/17/23 TRO (VC Ex. 51; Doc. 1-53). Third, Defendant has personally participated. *See, e.g.*, 8/8/23 Hrg. (VC Ex. 58; Doc. 1-60) at p.27/ln.19 et seq. & p.60/ln.18 et seq. Fourth, Defendant heads the small OSI whose unconstitutional conduct continues on her watch. E.g., VC ¶¶177-78, 739-41, 768-73, & 847-49 and Ex. 31/Doc. 33 (OSI Press Release), Ex. 37/Doc. 39 (OSI

Webinar Slides), Ex. 55/Doc. 57 (OSI Webinar Video), Ex. 56/Doc. 58 (OSI Webpage linking to Press Release & Trinity/Aliera C&D), and OSI Webpage linking to Webinar Slides & Video. *All these materials defaming HCSMs remain on OSI's website as of today (4/9/2024)*.[1]

**8. *'Key' Issue: Defendant Had More than 'Fair Warning' of the Law.***

"The *key question* is whether the defendants had 'fair warning' that their conduct was unconstitutional." *Paugh*, 47 F.4th at 1167 (emphasis added); *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (same). The law of Free Exercise (religious discrimination), Free Speech (viewpoint discrimination), and Expressive Association has been well established since at least *Lukumi*, 508 U.S. 520 (1993), *Rosenberger*, 515 U.S. 819 (1995), and *Roberts*, 468 U.S. 609 (1984). A word search for these cases and their progeny (e.g., *Hurley*, *Dale*, *Reed*, *Trinity Lutheran*, *Masterpiece Cakeshop*, *Cuomo*, *Tandon*, *Fulton*, & *Kennedy*) in Plaintiffs' filings would produce a page-long string citation just to those filings. All these cases, and the Circuit cases, cited by Plaintiffs predate Defendant's OSI tenure and her decisions in the pending HCSMs litigation. Defendant has had more than fair warning. No claims should be dismissed on QI grounds.

**C. Defendant Cannot Dismiss on 'Pre-Enforcement Standing' Grounds.**

Defendant's argument adds three points to her opposition to pre-enforcement standing. Defs. Reply at 6-7. First, it promises a counterclaim to prove that "Samaritan is engaged in the business of insurance." Second, it disputes Plaintiffs' use of *303 Creative*. Third, it says Defendant has "no regulatory" authority to subject individual Plaintiffs to "civil or criminal prosecution."

**1. *Defendant's Promised Counterclaim Proves 'Credible Threat.'***

Defendant promises a counterclaim to support her new argument for "comity." *Id*. at 6.

---

[1] www.osi.state.nm.us/pages/insurances/health/health-resources/other-types-of-health-insurance (links to Press Release and C&D) and https://osi-web-qa.osi.state.nm.us/news/announcements/staying-covered-after-covid-health-insurance-options-post-public-health-emergency-unwinding (links to Slides & Video).

This argument fails. First, the promised counterclaim reinforces "credible threat" for standing. VC ¶¶56-99. Second, this comity argument appears to be new, and waived. *Supra* at §I.A. Third, even if comity merited attention, asserting it *now* to bootstrap justiciability must fail: the "'Constitution deals with substance,' not strategies." *Fikre*, 144 S.Ct. at 777. Fourth, abstract comity principles cannot displace this Court's "'virtually unflagging obligation' to hear and resolve questions properly before it." *Id*. Fifth, exhaustion of state remedies is not required. "[P]laintiffs may bring constitutional claims under §1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.' This is [true for any] claim grounded in the Bill of Rights." Pls. Opp. at 3 (quoting *Knick*, 139 S.Ct. at 2172-73).

Sixth, however Defendant may define *insurance*, she must be enjoined from applying the Code to abridge constitutional rights. "Neither law nor logic recognizes government authority to strip an entity of its First Amendment rights merely by labeling it [insurance]. Quite the contrary, if [HCSMs] possess the First Amendment right to exercise [religion or association], then any law infringing that right—even one bearing the terminology of [insurance]—should be assessed under the same standards that apply to other laws burdening First-Amendment-protected activity." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1221 (11th Cir. 2022), *cert. granted in part*, 144 S.Ct. 478 (2023); Pls. Reply at 6 (quoting *Button*, 371 U.S. at 433).

### 2. *Defendant Misunderstands the Relevance of 303 Creative.*

Defendant says that, unlike *303 Creative* (6 F.4th 1160 & 600 U.S. 570), our case "is not a compelled speech case involving a public accommodation law." Reply at 6. This argument fails. First, this argument appears new, and waived. *Supra* at §I.A. Second, the distinctions Defendant cites between our case and *303 Creative* are irrelevant. VC ¶¶62-82, 1197-1202, 1576-78. Third, both binding decisions in *303 Creative*—Tenth Circuit & Supreme Court—support pre-enforcement standing here. VC ¶¶56-99; Pls. MFPI at 17-18; Opp. at 12-14 & 17. Fourth, both

decisions support Plaintiffs' compelled-speech claims. VC ¶¶1195-1202, 1570-78; Pls. MFPI at 16-17, 25; Opp. at 12-14 & 17. Fifth, the Supreme Court's decision also supports Plaintiffs' expressive-association claim. "[T]he First Amendment protects acts of expressive association." Pls. MFPI at 18 (quoting *303 Creative*, 600 U.S. at 586, which cites *Dale*, 530 U.S. at 647-656 & *Hurley*, 515 U.S. at 568-570); VC ¶¶1197-1220, 1547-84. *See 303 Creative*, 600 U.S. at 584-603 (majority opinion relies mainly on *Dale*, *Hurley*, & *Roberts v. U.S. Jaycees*). *See generally 303 Creative LLC v. Elenis*, 2024 WL 1281445 (D. Colo. Mar. 26, 2024) (final judgment).

#### 3. *Any 'Regulatory Authority' Over 'Individual Plaintiffs' Is Irrelevant.*

Again asserting a lack of regulatory authority over the individual Plaintiffs, Defendant says "OSI has no ability to compel these individuals to make any ideological statement or statement of fact." Regulatory authority is beside the point. Subjecting Samaritan to the Code necessarily will subject all its members, including the ten individual Plaintiffs, to the Code's anti-discrimination, grievance, reserves, and other provisions that will fundamentally restrict if not destroy their constitutional rights, including freedom from compelled expression. As explained *supra* at §I.C, the members *are* the ministry. There is no way to disentangle them from Samaritan here. *See also* VC ¶¶351-401 (details of Samaritan's ministry); 402-488 (testimony of individual Plaintiffs); 583-608 (details of the "deeply associational and expressive" nature of the ministry).

### D. Defendant Misstates 'Air Evac' and Risk of 'Third-Party Legal Action.'

Defendant disputes Plaintiffs' assertion "that they could be subject to legal action brought by a third party," Reply at 7, and Plaintiffs' use of *Air Evac*, *id*. at 8-9. These arguments fail.

#### 1. *Samaritan Could Be Subject to Legal Action by Myriad Third Parties.*

First, this argument appears to be new, and thus waived. *Supra* at §I.A. Second, even if Defendant were right that §59A-16-30 limits private actions to those under "automobile" policies by "third-party claimants," Reply at 7, she only addresses one type of third-party action. Defendant

is using her discretion to label Samaritan as ***insurance***, *supra* at §I.D.1, which belies Samaritan's contrary public declarations for three decades. That conduct shows both standing and harm.

That conduct may fuel federal and state legal actions in New Mexico and everywhere else. Examples include: (a) IRS action against Samaritan's IRC §501(c)(3) and/or IRC §5000A statuses (Pls. MFPI at 1-2; Reply at 18-19); (b) state regulator action against Samaritan for loss of or ineligibility for those federal statuses, resulting in revocation of state exemptions for state income, property, and/or sales and use taxes, for charitable solicitation regulation, etc. (VC ¶¶677-84, 914, 947); (c) state insurance-commissioner action against Samaritan for unauthorized insurance activity and/or safe-harbor violations (VC ¶¶763-65, 899); (d) state AG actions or lawsuits against Samaritan for consumer-protection or other violations (VC ¶¶683-85, n.340); and (e) private suits and/or class actions on behalf of past or current Samaritan members for fraud, misrepresentation, breach of contract and/or other contract, tort, or statutory claims (VC ¶¶743-60). *Anyone* can file a suit. Any regulator can act on its own initiative or in response to a tip or complaint by *anyone*.

**2. *Samaritan Correctly Explains and Relies on Air Evac.***

Defendant confuses *Air Evac*, 523 F.Supp.3d 859, *aff'd*, 37 F.4th 89, from earlier *Air Evac* litigation, claiming that that "it was an abstention issue" and "not a ripeness challenge," and that it is not "almost identical" to our case. Reply at 8-9. These arguments fail for seven reasons.

First, these arguments appear waived. *Supra* at §I.A. Second, it is hard to imagine a closer precedent than *Air Evac*, 523 F.Supp.3d 859, *aff'd*, 37 F.4th 89, where an insurance commissioner claimed that a medical-cost-sharing membership program was *insurance*. The only meaningful difference is that *Air Evac* was post-enforcement. Plaintiffs thus rely on it for ripeness rather than standing. Other differences are in Plaintiffs' favor—e.g., unlike Samaritan, Air Evac was a secular sharing program that did not even claim any individual constitutional rights, and since its challenge was post-enforcement, it faced additional jurisdictional obstacles in the form of abstention.

Third, while Air Evac was an abstention case, it also was a ripeness case. The district court devoted five full paragraphs to analyze and decide "ripeness." 523 F.Supp.3d at 866-67. That ripeness holding stands on its own. And, though not appealed, it necessarily was upheld by the Fourth Circuit's decision that it and the district court had jurisdiction. 37 F.4th at 93-104.

Fourth, the Fourth Circuit discussed "principles of comity," *id*. at 100, at some length, *id*. at 95-96, as part of its abstention analysis. Comity was insufficient to justify staying its hand. Fifth, Defendant boldly states "[t]he ability of the West Virginia Offices of the Insurance Commissioner to regulate the program was never addressed in any of the *Air Evac Ems* cases." Reply at 9. Of course, that is precisely the issue addressed by *Air Evac*, 523 F.Supp.3d 859, *aff'd*, 37 F.4th 89, underscoring Defendant's confusion over the two lines of *Air Evac* cases. Sixth, our case in most respects ***is*** "almost identical" to *Air Evac*, which Plaintiffs urge the Court to follow. E.g., VC ¶¶1276-1302; Pls. MFPI at 20-26; Opp. at 13, 21-22; Reply at 16-17.

Seventh, Defendant concludes by declaring that "OSI has encountered a similar program who after being threatened with administrative enforcement the parties entered into an agreement whereby the company agreed to comply with the Insurance Code." Reply at 9. This threatening observation does nothing but reinforce Plaintiffs' pre-enforcement standing.

### E. Defendant Overstates the 'Facial/As-Applied' Distinction.

Defendant next focuses on Plaintiffs' observation that our suit resembles both facial and as-applied challenges. Defs. Reply at 10-11. The last two pages rehash the argument that the federal statute that reserves "insurance" regulation to the states does not bother to define that term in any way that matters to our case. *Id*. at 11-13. These arguments fail as follows.

#### 1. *This Lawsuit Involves Challenges to Both a Statue and a Policy.*

"There are two types of First Amendment challenges that can be brought against a [government] policy, facial and as applied. A facial challenge considers the restriction as a whole,

while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1196 (10th Cir. 2005). Our suit challenges Defendant's policy (facially and as applied) and the Code (as applied). *Supra* at §I.B.

**2. *Plaintiffs Facial Challenge Applies Only to the HCSM 'Policy.'***

Defendant notes that a facial challenge to a "legislative Act" is "difficult," Reply at 10, and that there is "no written 'HCSM policy' for the court to review," *id*. at 11. But only the *policy* is challenged *facially* here, and "[o]ur precedent allows facial challenges to unwritten policies," *Faustin,* at 1196 n.1; *Taylor v. Roswell Indep. Sch.*, 2011 WL 13282136, at *17 (D.N.M. Nov. 23, 2011), *aff'd*, 713 F.3d 25 (10th Cir. 2013), including "'First Amendment facial challenges to unwritten policies,'" *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1158 n.13 (10th Cir. 2007) (cleaned up). That Defendant's HCSM "policy [may be] unwritten 'is irrelevant' to an analysis of its constitutionality.'" *Khan v. Barela*, 808 F.App'x 602, 606 n.3 (10th Cir. 2020).

**3. *Court-Created Exemptions Simply Enjoin Invalid Applications of Law.***

Defendant warns that a judicially created "religious exemption" would have "this Court act in a legislative capacity," making the issues unfit and thus unripe "for judicial decision." Reply at 11. Of course, such judicially created exemptions are the result of every injunction against an unconstitutional application of any law to any party. This is not only what courts do generally but what *Fulton* mandates specifically—"courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." 593 U.S. at 541; Pls. MFPI at 19; Reply at 16.

**4. *Plaintiffs' Claims Rest on Past, Ongoing, and Imminent Harms.***

In another swipe at ripeness, Defendant reiterates that all of Plaintiffs' "claims rest[] entirely on contingent future events that may not occur." Reply at 11. This argument was addressed *supra* at §I.D.2. Throughout the VC and briefing, Plaintiffs have alleged many concrete, ongoing, and imminent harms. Some have occurred; some are occurring; and some are surely to occur soon.

All are valid; none are contested; and all must be taken as established for present purposes.

**5. *Plaintiffs' Claims Meet All Ripeness Tests (Prudential or Otherwise).***

Defendant urges the Court to apply "prudential ripeness" to review "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." MTD at 8 (quoting *Abbott Labs*, 387 U.S. at 149). The fitness and hardship factors are subsumed in or overridden by pre-enforcement standing, Pls. Opp. at §IV.B., and are plainly met here in any event, *id*. at 19-20 (addressing fitness and hardship). First, the issues are "fit" for judicial review because they fit precisely what *303 Creative* authorizes and *Fulton* mandates. *Supra* at §§II.C.2 & II.F.3; Pls. Opp. at §IV.B.3. Second, to withhold judicial review would continue to impair the First Amendment rights of all Plaintiffs, *supra* at §I.D.2, the loss of which, "for even minimal periods of time, unquestionably constitutes irreparable injury," Pls. MFPI at 4-5 (quoting *Cuomo*, 141 S.Ct. at 67). It eventually would destroy their ministry. *Supra* at §II.D.1; Pls. MFPI at 18-20, 26.

**6. *McCarran-Ferguson Is Interpreted & Defined by Federal Case Law.***

Defendant here rehashes her argument that federal law reserves to the states the regulation of "insurance" without saying what it is. *Id*. at 11-13. This argument fails for many reasons.

First, Defendant argues "the gist of Samaritan's facial challenge appears to be that New Mexico definition of insurance is preempted by federal law." Reply at 11. This is imprecise and incomplete. However Defendant may define *insurance* under the Code, Plaintiffs oppose her *application* of it. And they facially challenge Defendant's HCSM policy not only on this ground but on every other ground in their Counts. That policy on its face (all applications) discriminates against HCSMS like Samaritan in the violation of the First and Fourteenth Amendments.

Second, Defendant errs in rejecting federal cases to define the "business of insurance" to determine the scope of the McCarran-Ferguson Act's reservation of *insurance regulation* to the states. Clearly, MFA is federal law construed by federal cases. Pls. Opp. at IV.C. Defendant

initially said the MFA "does not define insurance," MTD at 11, a remarkable reading of the main federal law that governs the "business of insurance" and who regulates it. While Defendant appears to concede that at least some concepts of insurance business and regulation are defined by federal cases, she cites cases focused on the *business* aspects of insurance business and regulation. Pls. Opp. at 22 n.7 ("to distinguish insurance regulation [from] securities regulation"). The irreducibly minimum term of the MFA is "insurance" and the MFA is nonsense without defining it.

Third, Defendant now relies heavily on a dissenting opinion in *Grp. Life v. Royal Drug*, 440 U.S. 205 (1979). (a) This argument appears new, and waived. *Supra* at §I.A. (b) This argument is based on a dissent and Defendant provides no other authority for it. (c) Even this dissent helps Plaintiffs. It says "insurance is an evolving institution" with ever "new forms of the business." Defs. Reply at 12 (quoting 440 U.S. at 238). This reinforces Defendant's error in focusing on the "business" of insurance rather than the business of "insurance," whose regulation MFA controls.

Fourth, Defendant implies the evolutionary stream of insurance is ever widening. Reply at 12. This curious view supports Defendant's contention in this Court that several church members staying after Sunday service to share medical costs is insurance. VC ¶¶19, 242. There is no limiting principle. In Defendant's view, insurance is whatever the legislature or she says it is. This turns the MFA into a blank check to the states. If *insurance* can mean anything, then it means nothing. Under federal cases, activity that lacks promise of indemnity or shifting of risk is not *insurance*. Thus, federal law supports no legitimate state interest in regulating such activity as *insurance*.

Fifth, Defendant ends by arguing for *abstention*, Reply at 13, a defense with no application here. There is no state enforcement proceeding to abstain from, and any attempt here to resurrect the *comity* principles embedded in abstention is meritless. *Supra* at §II.C.1 & II.D.2.

## III. SUPREME COURT'S UNANIMOUS DECISION IN FIKRE APPLIES.

**A. Fikre Just Reinforced this Court's Duty to Hear this Case.**

Last month, *FBI v. Fikre* rejected mootness arguments by FBI agents who allegedly placed Mr. Fikre "on the No Fly List for constitutionally impermissible reasons, including his religious beliefs." 144 S.Ct. at 778. Mootness and ripeness are "twin doctrines." *Sindt v. U.S. CIS*, 2023 WL 2301978, at *3 (D.D.C. Mar. 1, 2023). *See Fikre*, 144 S.Ct. at 779 (ripeness at inception; mootness thereafter). Here, Defendant's ripeness argument rests on "no hardship" and "no urgency." MTD at 10-11. Plaintiffs have shown both. But the question is whether this Court has jurisdiction (it does), in which case it "has a 'virtually unflagging obligation' to hear and resolve questions properly before it." *Id*. at 777. Defendant may no more stop this case for unripeness than she "may 'automatically moot [it]' by the simple expedient of suspending [her] challenged conduct." *Id*.

**B. Fikre Further Establishes Ripeness (Jurisdiction) Here.**

*Fikre* rejected the FBI's repudiating declaration that Fikre "will not be placed on the No Fly List in the future based on the currently available information." *Id*. at 778. The Court reasoned that the FBI "might relist him if he does the same or similar things in the future—say, attend a particular mosque." *Id*. It also rejected assertions that Fikre "'presumably has joined religious organizations' and interacted freely with his co-religionists," *id*., noting he "may have done none of [these], perhaps wishing to but refraining for fear of finding himself relisted," *id*. Ultimately, it focused on what the FBI's supposed "repudiation can prove about its future conduct." *Id*. at 779.

**C. Fikre Illustrates the Harm Inflicted and Relief Required Here.**

Even if Defendant repudiated any intent to pursue Samaritan, such a "sparse declaration falls short of demonstrating that [she] cannot reasonably be expected to do again in the future what [she has] done in the past." *Id*. at 778. No such repudiation can provide Plaintiffs all the relief they seek for harms from OSI's HCSM policy, including (a) damages and (b) judicial invalidation of

the policy. No unilateral action by Defendant can resolve damages except her agreement to pay them; and no unilateral repudiation concerning Samaritan can remedy the harm of hanging an insurance label on its core activity. *See supra* at §§I.D.2 & II.D.1; Pls. MFPI at 12-13.

**D. Fikre Illustrates the Relative Insignificance of Defendant's Interests Here.**

*Fikre* rejected jurisdictional limits even though they were "especially important in [that] national-security context." *Id*. at 779. Defendant has no such interests here. Pls. Opp. at §III.H; Reply at §III.F. Any contrary "argument is belied by the uncontested facts [of Samaritan's] decade[s]-long record of benevolent [sharing] service … without [OSI] interference…. Alleged governmental concerns 'ring hollow' when the government has been 'complacent' about a subject for many years only to 'suddenly burst into action.'… This undisputed fact is fatal to their argument that [their HCSM policy is] intended to promote public welfare [and] to deter [fraud]."[2]

**E. Fikre Further Compels Denial of Defendant's Motion to Dismiss.**

As in *Fikre*, Defendant has responded to the "complaint with a motion to dismiss for lack of jurisdiction, [largely accepting the] factual allegations, and [requiring] the courts [to] assume[] their truth." *Id*. at 775 n.1. The 366-page VC has pled the relevant facts and Defendant has contested none, leaving the Court to "accept [Plaintiffs'] uncontested factual allegations as true." *Id*. at 778. For example, nowhere does Defendant contest any of the actual, existing, concrete harms alleged by Plaintiffs. Nor does Defendant contest any of the imminent future harms alleged by Plaintiffs, except to say they are speculative and may not occur. All these harms must be taken as established for purposes of the MTD. As to governing law, "[t]he parties dispute none of these principles; the only question we face concerns their application." *Id*. at 778. To the extent of any disputes over legal principles, the issues are fully briefed and ripe for this Court's decision.

---

[2] *St. Timothy's Episcopal v. City of Brookings*, 2024 WL 1303123, at *9 (D. Or. Mar. 27, 2024).

Dated this 9th day of April, 2024

Respectfully submitted,

GAMMON & GRANGE, P.C.

/s/ J. Matthew Szymanski
J. Matthew Szymanski, Esq.
Bar No. 23-267 (lead counsel)
Ph./Fx. (703) 761-5030
JMS@gg-law.com

Scott J. Ward, Esq.
Bar No. 23-361 (co-counsel)
Ph./Fx. (703) 761-5012
SJW@gg-law.com
1945 Old Gallows Road, Suite 650
Tysons, VA 22182

J. BRIAN HELLER, P.C.

J. Brian Heller, Esq.
Associated Counsel (as of 1/9/2024)
200 Walnut Street
Washington, Illinois 61571
jbhpc@comcast.net
Ph. (309) 444-9223
Fx. (309) 444-9723

Attorneys for the Plaintiffs