## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAMARITAN MINISTRIES INTERNATIONAL,
ZACHARY CORDEL, RACHEL CORDEL,
DAVID ALLAN BELL, MONETTE BELL, REV.
ANDREW HEATH, HEATHER HEATH, JAY
O'NEILL, AMY O'NEILL, REV. NATHAN
BIENHOFF, and REBEKAH BIENHOFF,

      Plaintiffs,

v.

                                  No. 1:23-cv-01091-MIS-SCY

ALICE T. KANE,
in her personal capacity and in her official
capacity as Superintendent of Insurance for New
Mexico,

      Defendant.

### <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Plaintiffs'

Second Amended Complaint in Lieu of an Answer ("Motion"), filed October 2, 2024, by

Defendant Alice T. Kane ("Defendant"). ECF No. 52. Plaintiffs Samaritan Ministries

International, Zachary Cordel, Rachel Cordel, David Allan Bell, Monette Bell, Rev. Andrew

Heath, Heather Heath, Jay O'Neill, Amy O'Neill, Rev. Nathan Bienhoff, and Rebekah Bienhoff

(collectively "Plaintiffs") responded. ECF No. 59. Defendants did not reply. Upon due

consideration of the parties' submissions, the record, and the relevant law the Court will

**GRANT** the Motion.

## I.      BACKGROUND

Samaritan Ministries International ("Samaritan") holds itself out as a healthcare sharing

ministry ("HCSM"), operating as an Illinois non-profit and recognized by the Internal Revenue

1

Service as exempt from the insurance mandate in the Affordable Care Act ("ACA"). ECF No. 50 ¶¶ 6, 35. Samaritan collects "[s]uggested monthly contributions" from members each month, *id.* ¶ 40, and "coordinates [] direct, voluntary, member-to-member, monthly sharing with those in need," *id.* ¶ 38. "No sharing is guaranteed; no member is legally obligated to contribute funds; and no members are dropped solely due to their financial hardships." *Id.* ¶ 41. "Members must carry their own load and remain legally responsible for their own medical bills." *Id.* (quotation marks omitted).

HCSMs do not need to comply with the consumer protections of the ACA[1] and must wholly consist of members who "share a common set of religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides[.]" *Id.* ¶ 18 (quoting 26 U.S.C. § 5000A(d)(2)(B)(ii)(II)). Zachary Cordel, Rachel Cordel, David Allan Bell, Monette Bell, Rev. Andrew Heath, Heather Heath, Jay O'Neill, Amy O'Neill, Rev. Nathan Bienhoff, and Rebekah Bienhoff (collectively "individual Plaintiffs") are members of Samaritan who reside in New Mexico. *Id.* ¶ 7.

Defendant Kane is New Mexico Superintendent of Insurance, appointed on June 12, 2023, and leads the New Mexico Office of the Superintendent of Insurance ("OSI"). *Id.* ¶¶ 8-9. Other HCSMs have been the subject of OSI investigations and actions. *See id.* ¶¶ 150-57. Samaritan holds itself out as "[d]istint [a]mong HCSMs" because, in part, "it maintains a BBB

---

[1] *See also Meemic Ins. Co. v. Christian Care Ministry, Inc.*, 993 N.W.2d 4, 11 n.6 (Ct. App. Mich. 2022) ("To the extent that health care sharing ministries exist outside the insurance system in the state of Michigan and provide assistance based entirely on voluntary contributions, they may present a moral hazard. They can charge members for administrative expenses and take on members without regard to the risks associated with those members, yet they cannot be held liable when one of their members suffers a catastrophic injury and requires immense payments for medical care. Because health care sharing ministries can disclaim liability, the medical costs may wind up being borne by either the injured member or an insurer or healthcare provider. But our Legislature has chosen to authorize health care sharing ministries to operate in that way, and we are not empowered to overrule that choice simply because it presents an inevitable risk.").

rating of A+[,]" and "not one of the nearly 587,000 unique members it has served over thirty years has ever complained to any government agency anywhere." *Id.* ¶ 40. Based on the record before the Court, OSI has taken no action or made direct threat to take action against Samaritan. *See generally id.*

Plaintiffs bring twelve causes of action against Defendant in her personal capacity and official capacity: (1) violation of the free exercise clause by non-neutral treatment, *Id.* ¶¶ 253-59; (2) violation of the free exercise clause by non-generally applicable treatment, *id.* ¶¶ 260-69; (3) violation of the free exercise clause for invidious or especially harsh treatment, *id.* ¶¶ 270-83; (4) violation of the establishment clause of the First Amendment due to discrimination against and amongst religions, *id.* ¶¶ 284-88; (5) violation of both religion clauses of the First Amendment because of entanglement and intrusion on autonomy, *id.* ¶¶ 289-99; (6) violation of the free speech clause based on discrimination and compelled speech, *id.* ¶¶ 300-08; (7) violation of the First Amendment by infringing expressive association and solicitation, *id.* ¶¶ 309-15; (8) violation of the First Amendment and Fourteenth Amendment due to vagueness and overbreadth, *id.* ¶¶ 316-18; (9) violation of the Fourteenth Amendment due to discrimination, *id.* ¶¶ 319-25; (10) violation of the Fourteenth Amendment due to an unconstitutional process, *id.* ¶¶ 326-34; (11) federal preemption regarding the definition of insurance, *id.* ¶¶ 335-53; and (12) violation of the New Mexico Religious Freedom Restoration Act, *id.* ¶¶ 354-60.

Plaintiffs seek a preliminary and permanent injunction of regulatory action, a declaration that Defendant's actions are unconstitutional, damages, injunctive relief, and any other associated costs or relief. *Id.* at 66-67.

On October 2, 2024, Defendant filed the instant Motion to Dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). ECF No. 52 at 2. On October 28, 2024, Plaintiffs responded. ECF No. 59. Defendant did not file a reply.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When reviewing a facial attack, the court assumes the allegations in the complaint as true and questions the sufficiency of the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001); *see also Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). When reviewing a factual attack, the court does not take the allegations as true and may consider extrinsic evidence in its analysis. *See Holt*, 46 F.3d at 1003.

## III.    DISCUSSION

Defendant moves to dismiss on six grounds, three under Federal Rule of Civil Procedure 12(b)(1) and three under 12(b)(6): (1) lack of standing, ECF No. 52 at 9; (2) Eleventh Amendment immunity as bar to all federal causes of action, *id.* at 4; (3) plain language of the statute and Eleventh Amendment immunity as bar to claims brought under the New Mexico Religious Freedom Restoration Act, *id.* at 7; (4) lack of ripeness, *id.* at 11; (5) qualified immunity as bar to claims against Defendant in her personal capacity, *id.* at 16; and (6) failure to state a claim as to the cause of action alleging violation of the federal preemption clause, *id.* at 17. Because the Court agrees that Plaintiffs lack standing, and therefore the Court lacks subject matter jurisdiction, the Court limits its analysis to that issue.

Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over justiciable "Cases" and "Controversies." U.S. Const. art. III, § 2, *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008). "The case-or-controversy requirement 'is satisfied only where a plaintiff has standing.'" *Protocols*, 549 F.3d at 1298 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Whether a plaintiff has Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* To establish standing, a plaintiff must show: "(1) 'an injury in fact that is both concrete and particularized as well as actual or imminent'; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable

decision." *Protocols*, 549 F.3d at 1298 (quoting *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008)).

Defendant presents a factual attack on Plaintiffs standing and argues that "Plaintiffs' allegations only address *possible future* harm, not concrete and particularized harm they have experienced by actions taken by Defendant against them." ECF No. 52 at 10. She adds that the presence of New Mexico's Insurance Code, "in the absence or credible threat of enforcement, does not entitle [just] anyone to sue[.]" *Id.* at 10-11 (quoting *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (alteration hers)). Defendant also argues that Plaintiffs have not alleged "a sufficiently imminent injury" or "a credible threat of enforcement" sufficient to meet the pre-enforcement standard established in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). *Id.* at 11. Defendant adds that "[a] plaintiff does not satisfy Article III's standing requirement just because the plaintiff has 'a general legal, moral, ideological, or policy objection to particular government action.'" ECF No. 52 at 10 (quoting *Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024)).

Plaintiffs respond that they sufficiently pleaded "the 'credible threat' test, which assesses objectively 'reasonable threats,' not subjective intent" because they allege a "history of past enforcement against five of Samaritan's peers[.]" ECF No. 59 at 9-10 (quoting *Susan B. Anthony List*, 573 U.S. at 164, 165) (pointing to five other HCSMs that have received cease and desist orders from OSI to substantiate their incredulity to Defendant's claim that she will not similarly send one to Samaritan).[2]  Plaintiffs argue that future harm is "grave, even existential" and

_____

[2]        Plaintiffs first characterize Defendant's pre-enforcement argument as "nonsense" by reducing her argument to mean that "unless and until she initiates actual enforcement against Plaintiffs, 'there can be no injury in fact[.]'" ECF No. 59 at 9 (quoting ECF No. 52 at 11). Plaintiffs' argument oversimplifies Defendant's argument to make it easier to attack without addressing the argument raised. *See* ECF No. 52 at 10-11 (arguing that Plaintiffs have not established a credible threat of pre-enforcement of a statute) (citing to *Winsness*, 433 F.3d at 732; *Susan B.*

"almost certain to occur and is imminent." *Id.* at 11 (citing to ECF No. 50 ¶¶ 160-71, 236-42) (arguing in the complaint that OSI press releases amount to policy and are a "[c]redible [t]hreat to Samaritan"). Plaintiffs also argue that they have existing damages based on potential memberships lost. *Id.* at 11, 12 (citing ECF No. 50 ¶¶ 151, 225-35).

Plaintiffs bear the burden to establish each element of Article III standing. *See Susan B. Anthony List*, 573 U.S. at 158 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013); *Lujan*, 504 U.S. at 561). Because standing is jurisdictional, a motion to dismiss for lack of standing is properly asserted under Federal Rule of Civil Procedure 12(b)(1). *See Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). Here, Defendant challenges the facts upon which Plaintiffs claim injury in fact. *See* ECF No. 52 at 10-11. As a factual attack on Plaintiffs' standing, the Court does not take well-pleaded facts as true and may go beyond the pleading to determine whether jurisdiction exists. *See Baker*, 979 F.3d at 872. Seeing that Defendant solely relies on the first element of standing, the Court need only address whether Plaintiffs have established that they suffered injury in fact to determine that Plaintiffs do not have standing to bring their claims.

To the extent that Plaintiffs must establish standing for each form of relief sought, *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000), the Court construes that Plaintiffs argue (1) they have standing to bring claims related to pre-enforcement and Plaintiffs' request for injunctive and declaratory relief,[3] (2) Samaritan has

---

*Anthony List*, 573 U.S. at 151). To the extent that Plaintiffs' characterization is oversimplified, the Court finds their argument unpersuasive. The Court considers the merits of whether Plaintiffs sufficiently allege a credible threat of pre-enforcement *infra*.

[3]    To the extent that the claims for pre-enforcement relief are brought on behalf of all Plaintiffs, the Court does not see how individual Plaintiffs can claim injunctive relief as current members of Samaritan who are

standing to bring claims for prospective damages related to existing harms, and (3) individual Plaintiffs' each have individual-capacity damages that establish standing for Plaintiffs' request for retrospective relief.

### A.    Pre-enforcement

Where enforcement of a statute may violate a constitutional right, courts have broadened the Article III injury in fact requirement to include threatened enforcement that is sufficiently imminent. *Susan B. Anthony List*, 573 U.S. at 159; *see also Clapper*, 568 U.S. at 414. To show an injury in fact in the context of a pre-enforcement challenge, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quotation marks omitted). That Plaintiffs engage in a course of conduct with a constitutional interest is not in question. However, the remaining two elements are.

Plaintiffs assert—without discussion or citation to authority—that their conduct is arguably proscribed by statute through OSI policy. ECF No. 59 at 13-15. Based on the arguments and record before it, the Court is not persuaded that Plaintiffs' constitutional interests are arguably proscribed by OSI policy. Plaintiffs do not identify with particularity an OSI policy, nor do they provide authority to support a broad view of pre-enforcement that would encompass their theory. Nor has the Court independently found any authority supporting Plaintiff's theory. Given that lack, the only way for Plaintiffs' theory to succeed is for the Court to craft a nebulous argument that a policy exists by relying upon the same allegations that Plaintiffs use to argue the

---

exercising their constitutional and statutory rights, as discussed below. Therefore, the Court finds that the individual Plaintiffs do not have standing for prospective relief.

separate issue of credible threat. *See* ECF No. 59 at 14. The Court declines to attempt to meet the Plaintiffs' burden for them. And even if Plaintiffs could properly plead that an OSI policy or New Mexico statute as applied to them does exist, pre-enforcement standing fails on the last element—credible threat of enforcement. *See Winsness*, 433 F.3d at 732.

In determining whether the alleged threat of enforcement is credible, the Court would need to know the outcome of a state agency adjudication that may or may not happen. To that end, the Court first considers the actuality or imminence of such an injury—and the Court finds that the alleged injury is not sufficiently actual or imminent. *See Baker*, 979 F.3d at 872. Threatened enforcement is sufficiently imminent when it is "actual and well-founded[,]" *Susan B. Anthony List*, 573 U.S. at 160 (citation omitted), or "far from imaginary or speculative[,]" *id.* at 165 (citation omitted).

To substantiate their allegations that OSI has a policy of targeting HCSMs and that Samaritan is under threat of enforcement of that policy, Plaintiffs supply (1) OSI press releases, (2) an email from OSI to a third-party regarding an unrelated HCSM, (3) cease and desist orders Defendant issued to five other HCSMs, and (4) ongoing litigation with another HCSM.[4, 5] ECF No. 59 at 14.

---

[4]    Plaintiffs also argue that Defendant has directly threatened enforcement action in the instant case because in her Reply to Response to Motion to Dismiss the original complaint, "Defendant stated that 'Samaritan [is] an entity that engages in an activity that fits New Mexico's statutory definition of insurance,' and thus subject to a [cease and desist order,]" ECF No. 59 at 10 (citing ECF No. 50 ¶ 170 (quoting ECF No. 20 at 2)), and adding that "Defendant promised to counterclaim/countersue Samaritan to 'litigat[e] the dispute whether Samaritan is engaged in the business of insurance[,]" ECF No. 50 ¶ 171 (quoting ECF No. 20 at 6). These statements are taken out of context, and in any event, these statements are outside the scope of this Court's standing analysis. Plaintiffs must establish standing based on circumstances at time of filing the initial complaint. *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1161 (10th Cir. 2023).

Similarly, Plaintiffs provide a response Defendant gave to interrogatories in another case in which none of the Plaintiffs are a party. *See* ECF No. 59 at 10 (citing ECF No. 50 ¶¶ 160-68). The date of the response, March 4, 2024, falls outside of the scope of this Courts consideration as Plaintiffs filed their original complaint on December 7, 2023. *See* ECF No. 50 ¶ 160; ECF No. 1; *Rio Grande Found.*, 57 F.4th at 1161.

First, the press releases do not support an actual and well-founded belief in imminent threat because the content merely relays facts with no particular policy stated and the intended audience is the public, consumers within the insurance market. The press release dated December 3, 2019, provides consumers information on a for-profit company, unrelated to Samaritan, that does not qualify as an HCSM and has been under investigation for potentially fraudulent transaction in other states, and OSI warns consumers to beware of scams related to the company and its affiliates. *See* ECF 50-14 at 2-3. The March 26, 2020, press release cautions consumers about HCSMs because, among other issues, "[t]hey do not comply with the ACA," "do not guarantee payment for any health care[,]" and "[m]embers may also be subject to religious or moral restriction from the sharing ministry, which may leave members responsible for the full costs of health care that result from an activity the ministry does not agree with." ECF No. 50-15 at 4. In the same press release, OSI informs consumers that it has taken action against an HCSM and provides contact information if a consumer "believes they've been deliberately misled by one of these entities." *Id.* at 5. In an undated press release, the OSI informs consumers of s special enrollment period to allow people to sign up for health insurance in light of the COVID-19 pandemic, and warns of consumers of "low-quality" products that are not ACA compliant because the limit "coverage for pre-existing conditions[,]" "prescription coverage[,]" "coverage for hospitalizations and emergency rooms[,]" "mental health/behavioral health

---

[5]    Plaintiffs also appear to argue that Defendant conceded any argument against a credible threat because she did not address a three-factor test in *Peck v. McCann*, 43 F.4th 1116, 1132 (10th Cir. 2022). *See* ECF No. 59 at 16-17. Not only do Plaintiffs incorrectly shift the burden to Defendant, but they also incorrectly invoke the application of this analysis. The test they cite to is not a stand-alone test to determine a credible threat of enforcement but is instead factors of one element in a three-pronged test used for analyzing whether First Amendment rights were chilled. *See Peck*, 43 F.4th at 1129-30; *Chiles v. Salazar*, 116 F.4th 1178, 1195 (10th Cir. 2024). Since the Plaintiffs are arguing that they have satisfied pre-enforcement standing, the Court need not spend more time analyzing a test that Plaintiffs did not correctly apply. Even so, the Court quells any concerns about potentially chilled rights in its harms analysis *infra*.

treatment[,]" and "coverage for outpatient/same-day surgery[.]" *Id.* at 6. The purpose of these press releases is to inform the public in making decisions within the insurance market. *See* ECF No. 50 ¶¶ 96-97; ECF No. 50-14.

Informing a consumer of health insurance what the OSI considers to be health insurance is substantially different than an adjudicated determination that a specific provider is not health insurance in violation of state statutes. While Plaintiffs may not agree with the contents of the press releases, *see* ECF No. 50 ¶¶ 98-99, 162-63, nothing in the generalized information and informative tone of the press release indicates an imminent threat of enforcement.[6] Plaintiffs cite no authority to support that a press release can be construed as a credible threat of enforcement, and instead, appear to conflate the concept of government policy with the execution of administrative function, like promulgating an informative press release.

Second, and like the press releases, the email does not support an actual and well-founded belief in imminent threat. The email's contents were related to an entirely different HCSM, written in response to a notice that the HCSM was accredited by a newly formed organization. *See* ECF No. 50 ¶¶ 145-46. In its entirety the OSI's email says "Thank you for this information, Allen. While I respect the [Christian Care Ministry] business model, under the law of New Mexico they must be licensed as an insurance company. The accreditation does not change that fact." ECF No. 50-16 at 2. The email regards an unrelated HCSM as a short response to an announcement the OSI received. *Id.* It provides no indication of impending adjudication or other formal process directed at Christian Care Ministry or any other HCSMs. Further, Plaintiffs

---

[6] Further, nothing in the press releases identifies Samaritan or threatens action. Although the Court can understand why Plaintiffs thought Samaritan was included in the description of products that do not comply with ACA, the OSI has the right to inform consumers on what types of products are not ACA-compliant.

provide no authority that supports such an email could warrant a credible threat, a concrete and particularized, actual or imminent injury.

Third, Plaintiffs point to five other HCSMs who are, or have been, the subject of adjudication by the OSI. ECF No. 59 at 10; ECF No. 50 ¶ 150. However, each of those cases are quite distinct from what Plaintiffs anticipate is their injury. In one instance, OSI initiated an investigation after OSI became aware of fraud claims in other states. *See* In re Trinity Healthshare Inc., Ord. to Cease and Desist and Imposing Penalty, 20-00020-COMP-CL, Document #100001672 (N.M. Off. of the Superintendent of Ins. Mar. 26, 2020); *see also* ECF No. 50-14 at 2-3; *see, e.g.*, *LeCann v. Aliera Companies, Inc.*, Civil Action No. 1:20-cv-2429-AT, 2021 WL 2554942, at *2 (N.D. Ga. June 22, 2021). In two other cases, the OSI became aware that the alleged HCSMs failed to meet a basic time requirement and were "not a qualifying 'grandfathered' HCSM under the ACA." *See* In re OneShare Health LLC, Ord. to Cease and Desist, 21-00002-COMP-CL, Document #100002037, ¶¶ 3-4 (N.M. Off. of the Superintendent of Ins. Jan. 13, 2021); *see also* In re Gospel Light Mennonite Church Med. Aid Plan dba Liberty Healthshare,[7] Ord. to Cease and Desist and Ord. to Show Cause, 2021-0085, ¶¶ 6-8 N.M. Off. of the Superintendent of Ins. Nov. 23, 2021). In another case, the HCSM was not under OSI's scrutiny until OSI received a consumer complaint and began an investigation. *See* In re House of Prayer and Life, Inc., dba Jericho Share, Ord. to Cease and Desist and Ord. to Show Cause, 2022-0090, ¶ 2 (N.M. Off. of the Superintendent of Ins. Nov. 29, 2022). In the fifth case that Plaintiffs reference, the HCSM only came under OSI's scrutiny via investigation of a third-party. *See* In re Sedara Med. Cost Sharing Cmty., 2023-0026, ¶¶ 4-7 (N.M. Off. of the Superintendent

---

[7] In a hearing, OSI also indicated that the investigation into Liberty was triggered by consumer complaints. *See* ECF 50 ¶ 154.

of Ins. Apr. 17, 2023). In each example, OSI instigated an investigation under circumstances unique to the parties involved, resulting in findings specific to individual circumstances.

Nothing that Plaintiffs provide indicates the inevitability of comparable fraud claims or formal complaints against Samaritan such that it would constitute a credible threat to Plaintiffs constitutional rights. *Cf. Susan B. Anthony List*, 573 U.S. at 160. While Plaintiffs need not subject themselves to enforcement, *see id.* at 158-59, the Court is not persuaded that Plaintiffs established a credible threat of prosecution based on the outcomes of the five examples of OSI action described. These examples do not "allege[] an actual and well-founded fear that the law will be enforced against [Plaintiffs][,]" *id* at 160, such that the "threatened enforcement is sufficiently imminent[,]" *id.* at 159.  Finding that OSI would take any action against Samaritan and the eventual outcome "require guesswork as to how independent decisionmakers will exercise their judgment[,]" *Clapper*, 568 U.S. at 413, and Plaintiffs have not properly pleaded that a particular result is imminent, *see Susan B. Anthony List*, 573 U.S. at 159; *Baker*, 979 F.3d at 874. As such, the Court finds that Plaintiffs have not established a history of past enforcement that warrants pre-enforcement standing in the instant case.

Fourth, Plaintiffs point to "ongoing state and federal litigation against Liberty as unauthorized insurance[,]" ECF No. 59 at 14 (citing ECF No. 50 ¶¶ 150-57), but the litigation that Plaintiffs cite does not indicate escalation on OSI's behalf. In the federal case, Gospel Light Mennonite Church Medical Aid Plan dba Liberty Healthshare ("Liberty") and individual plaintiffs filed a complaint against the OSI and Interim Superintendent of Insurance, Jennifer A. Catechis, alleging various state and federal constitutional rights violations. *Gospel Light Mennonite Church Med. Aid Plan v. N.M. Off. of the Superintendent of Ins.*, 1:23-cv-00276-MLG-KK, ECF No. 1 ¶ 191-404 (D.N.M. Mar. 31, 2023). In state court, Liberty appealed OSI's

administrative decision. *See Gospel Light Mennonite Church Med. Aid Plan v. Off. of the Superintendent of Ins.*, D-101-CV-202300660 (Mar. 22, 2023). In no way can the Court construe litigation instigated by Liberty to be "ongoing state and federal litigation against Liberty." Liberty has a right to have its day in court, appeal, and defend its rights, but exercising its right to litigate in no way indicates that OSI is "unnecessarily aggressive" in administering its mission. *See* ECF No. 50 ¶ 150-54.[8] Nor can Liberty's choices in litigation reflect an intent on OSI to similarly litigate Samaritan. *See Susan B. Anthony List*, 573 U.S. at 160.

None of the alleged facts that Plaintiffs rely upon present a credible threat of enforcement such that the threat of injury rises from merely possible to almost certain. *See Clapper*, 568 U.S. at 409, 414 n.5. Therefore, the Court finds that Plaintiffs failed to allege a threatened enforcement that is sufficiently imminent. *See Susan B. Anthony List*, 573 U.S. at 159; *see also Food and Drug Admin.*, 602 U.S. at 381.

**B.    Samaritan's existing harms**

As part of its argument for prospective relief, *see* ECF No. 59 at 11 n.6, Samaritan argues that it endures existing harms, *see id.* at 11.[9] Samaritan argues that out of its fear of a "grave, even existential" threat that is "almost certain" to occur, it has lost revenue by turning away prospective members, diverted resources, and endured reputational harm, which are all "concrete, existing, and ongoing" harms. *See id.*

---

[8]    Further, Plaintiffs quote District Judge Matthew Garcia out of context to appear inflammatory and to cast OSI in an aggressive light. *See* ECF No. 50 ¶¶ 156, 256.

[9]    Plaintiffs add that Defendant conceded alleged present, actual, and ongoing injuries "[s]ince Defendant does not even mention, let alone contest, any of these existing harms[.]" ECF No. 59 at 15. This argument improperly shifts the burden to show injury onto the Defendant. *See Protocols*, 549 F.3d at 1298; *see also Susan B. Anthony List*, 573 U.S. at 158. The Plaintiff must first plausibly allege injury in fact, and, as the Court finds above, the Plaintiffs have not done so.

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416 (citations omitted); *see also Murthy v. Missouri*, 603 U.S. 43, 73 (2024). Having found that Plaintiffs have not alleged a credible threat of enforcement, the Court cannot logically reach the conclusion that Samaritan's actions based on those fears add up to an injury in fact. The alleged existing harm that Plaintiffs describe amounts to an anticipation of attenuated action to manufacture damages. To hold otherwise would create an incentive structure that encourages self-harm in order to establish standing. *See Clapper*, 568 U.S. at 416.

### C.    Individual-capacity damages

Without citing to any particular part of their Second Amended Complaint, Plaintiffs appear to argue for nominal compensatory damages as retrospective relief for violations of the individual Plaintiffs' constitutional rights as generally described in each count of the Complaint. *See* ECF No. 59 at 12. All counts relate to violations of federal or state constitutional rights based on the premise that OSI threatens Samaritan with enforcement of the New Mexico Insurance Code. *See* ECF No. 50 ¶¶ 253-360. All named individual Plaintiffs were current and active members of Samaritan at the time of filing the initial Complaint. *See* ECF Nos. 50-8 ¶ 7, 50-9 ¶ 6, 50-10 ¶ 7, 50-11 ¶ 5, 50-12 ¶ 6. They allege that as active members they exercise their constitutionally protected rights, which would be threatened if Samaritan were to close. *See id.*; *see also* ECF No. 50 ¶ 314. Although their rights are not currently burdened and have not been burdened, Plaintiffs fear that those rights will be burdened in the future—thus, it appears

Plaintiffs are not seeking retrospective relief at all and are in fact asking for prospective relief based on those fears.[10]

Regardless, as active members of Samaritan exercising their constitutional rights, the Court fails to see how the individual Plaintiffs can make claims for nominal or compensatory damages which are based on past injuries. *See Tandy v. Wichita*, 380 F.3d 1277, 1289 (10th Cir. 2004). Plaintiffs have not articulated or established any past injuries. Therefore, the Court finds that the individual Plaintiffs failed to allege an actual or imminent injury that would warrant retrospective damages.

For all the foregoing reasons, the Court finds that Plaintiffs have failed to allege an actual or imminent injury that is concreate and particularized for any of the twelve counts. *See Protocols*, 549 F.3d at 1298; *Susan B. Anthony List*, 573 U.S. at 158. Accordingly, the Court finds that Plaintiffs lack standing on all counts as a threshold matter, and therefore the Court lacks subject matter jurisdiction. *Id.*

## IV.    CONCLUSION

Consequently, the Court HEREBY ORDERS that:

1.    Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint in Lieu of an Answer [ECF No. 52] is **GRANTED**;

2.    Plaintiffs' claims against Defendant are hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

---

[10]    What Plaintiffs seek is more akin to an advisory opinion on how the OSI should interpret the State of New Mexico's Insurance Code. Plaintiffs point to other states that have a noticeably different code than New Mexico, ECF No. 50 ¶¶ 23-25, states that carve out exceptions for HCSMs, and ask the Court to impose a similar standard on state law. The New Mexico Legislature has had at least one opportunity to explicitly carve out a similar exception in New Mexico's code and declined to do so. *See id.* ¶¶ 24, 81 (referring to H.B. 480, 52d Leg., 1st Sess. (N.M. 2015)). Plaintiffs now request the Court to step in and decide the issue for the New Mexico. Because Plaintiffs lack standing, the Court lacks jurisdiction to decide the issue.

3.      All other pending motions are **DENIED AS MOOT**; and

4.      This case is now **CLOSED**.


**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE